IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 11, 2007 Session

**STATE OF TENNESSEE v. PIERRE JACKSON**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 01-12067-68, 01-12070-71      John P. Colton, Jr., Judge**

---

**No. W2006-02127-CCA-R3-CD  - Filed May 12, 2008**

---

In 2003 the defendant, Pierre Jackson, was convicted by a Shelby County jury of two counts of aggravated vehicular homicide, two counts of leaving the scene of an accident, and one count of driving on a revoked license, third offense, receiving an effective sentence of fifty-two years, five months, and twenty-nine days.  On appeal, he argues that the State's proof as to prior DUI convictions was deficient, the indictments and jury instructions were deficient, and the trial court erred in sentencing.  Following our review, we affirm the defendant's convictions but remand for resentencing as to the convictions for aggravated vehicular homicide upon finding that the trial court's application of one sentencing enhancement factor violated the Sixth Amendment.  We also direct the entry of judgments reflecting the convictions for leaving the scene of an accident.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed &
Remanded for Resentencing & Entry of Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Brooks (on appeal), Charles Gilchrist and Tyrone Paylor (at trial), Memphis, Tennessee, for the appellant, Pierre Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson and Stephanie Johnson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Taken in the light most favorable to the State, the evidence showed that the defendant, operating a motor vehicle while under the influence of an intoxicant, struck and killed a couple on a motorcycle.

At trial, Carolyn Young testified that she was driving behind a motorcycle on Summer Avenue in Memphis on the night of July 25, 2001. As she entered the junction of Summer Avenue and Interstate 240, she glanced over and noticed that the two motorcycle riders were lying on the road. She did not see a collision but saw a very dark vehicle cross in front of her and approach the on-ramp to the interstate. She never saw the driver of the vehicle.

Christopher Colyer was traveling westbound on Summer Avenue when he came upon a traffic accident at the Interstate 240 junction. He did not witness the accident but, after stopping his vehicle and going over to the motorcycle, saw a man lying on top of the motorcycle and a woman lying on top of the man. Bystanders told him that a van had stopped on the entrance ramp to Interstate 240. He pursued the driver of the van and saw him in a parking lot, waving his arms and stumbling back and forth. Colyer testified that he observed that the defendant, who was driving the van, smelled of alcohol and that his speech was slurred. The defendant told Colyer that the motorcycle ran into him, he had drunk a beer, and he did not have a driver's license. In Colyer's opinion, the defendant was not in a suitable condition to drive a vehicle.

Officer Marlon Wright of the Memphis Police Department testified that he was called to the scene of the accident. He detained the defendant and returned him to the scene of the accident, observing that he smelled of alcohol, had bloodshot eyes and slurred speech, and claimed to be unsure of what had happened. He placed the defendant in the back of his car for approximately ten minutes. When he removed the defendant, the back of the car had a very strong odor of alcohol. On cross-examination, Officer Wright acknowledged that he did not witness the accident and that the defendant was cooperative with him.

Officers John Simpson and Jeff Farr of the Memphis Police Department testified that they arrived at the scene after Officer Wright. Both observed that the defendant was disoriented, had bloodshot and watery eyes, and emitted a strong odor of alcohol. It took the defendant several minutes to retrieve his identification from his pockets after requested to do so by Officer Simpson. They transported the defendant to the Regional Medical Center to give a blood sample.

Sergeant William C. Porter of the Memphis Police Department Special Traffic Investigation Unit interviewed the defendant at the scene. After being advised of his Miranda rights, the defendant told Sergeant Porter that he was on his way to pick up his daughter from work. The defendant said he had a green arrow as he approached the intersection, and, when the arrow changed to yellow, he sped up to make the turn and his car was struck. He said he did not see the other vehicle involved in the accident. Sergeant Porter testified that the defendant smelled of alcohol, his eyes were bloodshot and watery, and he had a "sleepy appearance about him." Sergeant Porter then administered field sobriety tests. The defendant recited the alphabet correctly, but did not

satisfactorily complete the one-leg stand or heel-to-toe tests. Consequently, Sergeant Porter formed the opinion that the defendant was too impaired to safely operate a motor vehicle.

Mark Dunlap, a forensic scientist with the Tennessee Bureau of Investigation, testified that he analyzed the blood sample taken from the defendant on the night of the accident and found that the blood alcohol concentration of the sample was 0.12%.

Diane Joyner, the safety examiner supervisor for the Memphis office of the Tennessee Department of Safety, testified that on July 25, 2001, the defendant's record showed that his driver's license was suspended, revoked, or canceled.

Dr. O.C. Smith, the Shelby County Medical Examiner, performed the autopsies on both victims, determining that each died of multiple injuries inflicted accidentally, which was consistent with their being involved in an automobile collision.

The jury convicted the defendant of two counts of vehicular homicide, felony and misdemeanor leaving the scene of an accident, and driving while license revoked. A hearing was then conducted at which the State presented proof on the charges of aggravated vehicular homicide and driving on a canceled, suspended, or revoked license as a repeat offense.[1] Several modes of proof were utilized. Without objection from the defendant, the State tendered a certified copy of the defendant's Tennessee Department of Safety driver's history as an exhibit to the proceedings. Christina Lane, a keeper of the records for the Shelby County Criminal Court Clerk's office, testified that the defendant was convicted of driving under the influence on September 30, 1993 and November 16, 1990. She said that the record of the 1993 conviction did not indicate whether the defendant was represented by counsel, but the record of the 1990 conviction showed that the defendant was represented by the public defender's office. William Freeman, keeper of the records for the general sessions criminal court, testified that the defendant pled guilty to driving under the influence on November 14, 1980, and to driving while license cancelled, suspended, or revoked on January 24, 2001, and on April 6, 2001. On cross-examination, Freeman said that his record of the DUI conviction did not show whether the defendant was represented by counsel.

The judgments in this matter were entered on June 2, 2003. On July 18, 2003, the defendant filed an untimely motion for new trial, which was denied on September 4, 2003. On August 13, 2004, the defendant filed a petition for post-conviction relief alleging that his counsel's failure to move timely for a new trial constituted ineffective assistance. The trial court granted post-conviction relief, vacated the defendant's convictions, immediately reinstated them, and remanded the case to the original trial court to allow the defendant thirty additional days to file a motion for new trial. The defendant then timely moved for a new trial.

---

[1] See Tenn. Code Ann. § 39-13-218(c) ("If the defendant is convicted of vehicular homicide under § 39-13-213(a)(2), the jury shall then separately consider whether the defendant has the requisite number and types of prior offenses or level of blood alcohol concentration necessary to constitute the offense of aggravated vehicular homicide.").

## ANALYSIS

On appeal, the defendant presents five issues for our review. He argues that (1) his convictions for aggravated vehicular homicide must be vacated because the evidence was insufficient as a matter of law to establish that he had the two prior DUI convictions alleged in the indictment; (2) the indictment charging him with driving while license cancelled, suspended, or revoked failed to state an offense and give proper notice of the charges against him; (3) the trial court's instructions to the jury resulted in a constructive amendment of the indictments for aggravated vehicular homicide and driving while license cancelled, suspended, or revoked; (4) the trial court's failure to charge to the jury an essential element of the offense of leaving the scene of an accident amounts to plain error; and (5) the trial court's use of enhancement factors and imposition of consecutive sentencing was improper. We will review these claims.

### I. Evidence of Prior DUI Convictions

The defendant argues that his 1980 and 1993 DUI convictions should not have been used to convict him of aggravated vehicular homicide because the State did not affirmatively show that he was represented by counsel or waived his right to counsel in those cases.

Vehicular homicide is, *inter alia*, "the reckless killing of another by the operation of an automobile, airplane, motorboat or other motor vehicle, as the proximate result of: . . . (2) [t]he driver's intoxication, as set forth in [Tennessee Code Annotated] § 55-10-401." Tenn. Code Ann. § 39-13-213(a)(2) (2006). Tennessee Code Annotated section 39-13-218(a) codifies aggravated vehicular homicide as "vehicular homicide, as defined in § 39-13-213(a)(2), where: (1) [t]he defendant has two (2) or more prior convictions for: (A) [d]riving under the influence of an intoxicant; (B) [v]ehicular assault; or (C) [a]ny combination of such offenses[.]" If a person is convicted of vehicular homicide under Tennessee Code Annotated section 39-13-213(a)(2), the jury must determine whether the defendant has the requisite number of and types of prior offenses to constitute the offense of aggravated vehicular homicide. Tenn. Code Ann. § 39-13-218(c) (2006).

Before reviewing the authorities cited by the defendant and the State, we first observe that, at trial, defense counsel did not object to the testimony of either of the witnesses called by the State to prove the defendant's prior DUI convictions, nor to a Tennessee Department of Safety printout setting out the defendant's fairly extensive record of convictions, including the DUIs which are the subject of this issue.

In his argument, the defendant relies upon State v. O'Brien, 666 S.W.2d 484 (Tenn. Crim. App. 1984), where the defendant had been convicted of fourth offense DUI. Although stipulating that he had three prior DUI convictions, O'Brien challenged their use to enhance his punishment because the State did not prove that he was represented by counsel or waived the right to counsel in those prior cases. O'Brien, 666 S.W.2d at 485. This court agreed and reversed the defendant's conviction, holding that Baldasar v. Illinois, 446 U.S. 222 (1980), required that the State affirmatively establish that a criminal defendant was represented by counsel in a prior misdemeanor

conviction before such conviction could be used for enhancement purposes.[2] Id. The defendant in the present appeal argues that his situation is squarely on point with O'Brien and that his convictions for aggravated vehicular homicide similarly must be reversed. We note that in O'Brien, unlike in the present case, the defendant filed a pretrial motion seeking to block the State's use of the prior DUI convictions. In the present case, as we have said, neither pretrial nor during the trial did the defendant object to the evidence of the prior DUI convictions.

The State, citing State v. Killebrew, 760 S.W.2d 228 (Tenn. Crim. App. 1988), responds that the defendant has waived this assignment of error by failing to object contemporaneously to the introduction of the testimony and exhibits related to the prior convictions. In the alternative, the State argues that the evidence is sufficient to support the convictions for aggravated vehicular homicide. The State argues that Hickman v. State, 153 S.W.3d 16 (Tenn. 2004), distinguishes Baldasar on the grounds that, in the latter case, the record affirmatively showed that the defendant *was not* represented by counsel. In Hickman, our supreme court held, in the context of a habeas corpus proceeding, that a judgment is not rendered void by its silence as to whether the defendant was represented by counsel or waived the right to counsel. 153 S.W.3d at 25. The defendant asserts that Hickman's scope should be limited to habeas corpus proceedings, where the burden of proof lies with the petitioner by a preponderance of the evidence, not the State beyond a reasonable doubt.

In its order denying the defendant's timely motion for a new trial, the trial court found that the judgments were facially valid and, thus, could be used for enhancement purposes:

> The Tennessee Supreme Court stated in State v. McClintock, 732 S.W.2d 268, 271-72 (Tenn. 1987), that "unless invalid on its face, a prior judgment of conviction in a court with personal and subject matter jurisdiction cannot be collaterally attacked in a subsequent proceeding in which the challenged conviction is used to enhance punishment." Regularity of criminal proceedings in court is presumed when it appears on the face of the proceedings that the court had jurisdiction over the subject matter and the parties. *See* McClintock 732 S.W.2d at 270. Such is the case before us. We conclude that the prior convictions for DUI in [1980 and 1993] are valid on their face and were properly used to enhance the defendant's sentence. Any attack upon the facially valid judgments should be reserved for a post-conviction proceeding, not this case.

We agree with the State that, although the defendant raised this issue in his motion for new trial, he waived plenary appellate review by failing to contemporaneously object at the sentencing hearing. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see also State v. Thompson, 36

---

[2] The United States Supreme Court has subsequently limited the scope of Baldasar to convictions where actual incarceration was imposed. Nichols v. United States., 511 U.S. 738, 748-49 (1994).

S.W.3d 102, 108 (Tenn. Crim. App. 2000) ("This court is extremely hesitant to put a trial court in error where its alleged shortcoming has not been the subject of a contemporaneous objection.").

We base our conclusion additionally upon an analysis of the holding in State v. Albert Evans, No. W2005-00161-CCA-R3-CD, 2006 WL 1381585 (Tenn. Crim. App. May 17, 2006), perm. to appeal denied (Tenn. Oct. 16, 2006), wherein the defendant was convicted of first degree premeditated murder and sentenced to life in prison without parole on the basis of the jury's finding of three aggravating circumstances, including that the defendant was previously convicted of a felony whose statutory elements involved the use of violence to the person. Id. at *14. He argued on appeal that no competent evidence supported the application of the violent felony aggravator because the State erroneously introduced a negotiated plea agreement form, rather than a copy of the judgment, to prove the prior conviction. This court held that the defendant waived the issue for appellate review by failing to contemporaneously object to the introduction of the document or deny the existence of the prior conviction. Id. at *15. We conclude that, similarly, the defendant in this case waived plenary review of this assignment of error by not objecting contemporaneously to the introduction of his driving record or the testimony of the recordkeepers, and not denying the existence of his three prior DUI convictions. He has not sufficiently preserved this issue for appellate review, so it is unnecessary for us to reach the merits of his argument.

We recognize that this court may disregard waiver and consider error whenever necessary to do substantial justice. Tenn. R. Crim. P. 52(b); State v. Smith, 24 S.W.3d 274 (Tenn. 2000) (adopting five-factor test for plain error review first set out in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994)). In order for us to find plain error, Adkisson requires that "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-42). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. In addition, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" Id. at 283 (quoting Adkisson, 899 S.W.2d at 642). We find this issue inappropriate for plain error review because it is not evident that a clear and unequivocal rule of law has been breached, or that consideration of the error is necessary to do substantial justice. Tennessee Code Annotated section 39-13-218 is silent as to the type or amount of proof necessary to establish the prior convictions required by section 39-13-218(a)(1).[3] Furthermore, the proof of guilt introduced at trial was ample. This claim is without merit.

---

[3] Significantly, the statute does not require that the *judgment* be introduced to establish the validity of a prior conviction.

## II. Indictment for Driving While License Suspended, Revoked, or Cancelled

The defendant alleges that the indictment charging him with driving while his license was cancelled, suspended, or revoked failed to state an offense or give proper notice of the charges against him. He argues that the indictment alleges three separate offenses in the same count and is fatally deficient for failing to inform him of the essential elements of the charged offense. The State counters that the indictment was valid because it charged the defendant with different means of committing only one offense.

The challenged indictment reads:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> PIERRE JACKSON
>
> on July 25, 2001 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly drive a motor vehicle upon a public highway in Shelby County, Tennessee, at a time when the said PIERRE JACKSON's privilege to do so was cancelled, suspended or revoked, in violation of T.C.A. 55-50-504, against the peace and dignity of the State of Tennessee.

An indictment or presentment must inform the accused of "the nature and cause of the accusation." U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. In addition, Tennessee Code Annotated section 40-13-202 requires that an indictment "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."

An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). Our supreme court has held that an indictment is sufficient to satisfy notice requirements if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." Id. at 299 (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)).

The trial court found that the indictment was sufficient to show the charges against the defendant:

> This court feels that the indictment was sufficient to show the Defendant what he was being charged with in order for him to adequately prepare for trial and it

should have been understood what statute the Defendant was charged with breaking. It is generally sufficient if the indictment states the offense in the words of the statute or in words equivalent to the statute. State v. Griffis, 964 S.W.2d 577 (Tenn. Crim. App. 1997). The true test of an indictment is not whether it could be more definite and certain, but whether it contains the elements of the offense to be charged and sufficiently appri[s]es the defendant of what he or she must be prepared to meet. State v. Overton, 193 Tenn. 171, 245 S.W.2d 188 (1951); State v. Sowder, 826 S.W.2d 924 (Tenn. Crim. App. 1991); State v. Smith, 612 S.W.2d 493 (Tenn. Crim. App. 1980). Furthermore, if the Defendant did not have enough information to prepare a defense, he could have filed a Motion for a Bill of Particulars. It is the opinion of this court that the indictment of [the defendant] was more than sufficient to apprise him of the charges being brought against him.

The defendant argues that he may not be charged with driving while license cancelled, suspended, or revoked in a one-count indictment because this court held in State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001), that Tennessee Code Annotated section 55-50-504 sets out three separate and distinct offenses. The defendant in Goodson was indicted and convicted for driving on a revoked license. However, the proof at trial showed that the defendant's license had been suspended, not revoked, which this court found to be a constructive amendment of the indictment, reversing the defendant's conviction. Id. at 244-45.

However, Goodson was indicted and convicted of driving on a revoked license, but the proof was only that his license was suspended. By contrast, the defendant in the present case was indicted and convicted of driving on a cancelled, suspended, or revoked license, and the State's proof demonstrated that his license was revoked. It is immaterial that the defendant's indictment charged him with all three means of violating Tennessee Code Annotated section 55-50-504; "[w]hen the offense [charged in the indictment] may be committed by different forms, by different means or with different intents, such forms, means or intents may be alleged in the same count in the alternative." Tenn. Code Ann. § 40-13-206(a). Goodson itself stated that it would have been proper for the State to charge the defendant with all three means of violating section 55-50-504 within a single count and prove any one of the three means. See Goodson, 77 S.W.3d at 244 n.2.

The indictment in this case satisfies all of the Hammonds requirements. It is sufficiently detailed to inform the defendant of the statute he was accused of violating, allow the entry of a proper judgment, and protect the defendant from double jeopardy. We uphold the determination of the trial court on this issue.

### III. Jury Instructions

The defendant next alleges that the trial court's jury instructions constructively amended the indictments for aggravated vehicular homicide and driving while license cancelled, suspended, or revoked. In his view, the trial court impermissibly broadened the indictment by instructing the jury on all three means of committing aggravated vehicular homicide, when the indictment and proof at

trial alleged only one means of committing the offense. He also alleges that the court's instructions on the charge of driving while license cancelled, suspended, or revoked constructively amended the indictment. As we understand, the defendant argues that this constructively amended indictment resulted in a jury verdict that was not unanimous.

The challenged jury instructions read, in pertinent part, as follows:

[Aggravated Vehicular Homicide]

The law provides for increased punishment for aggravated vehicular homicide. Any person who commits the offense of [aggravated][4] vehicular homicide is guilty of a crime. For you to find the defendant guilty of [aggravated] vehicular homicide, the State must have proven beyond a reasonable doubt the existence of the following essential elements: One, that the defendant has two or more prior convictions for driving under the influence of an intoxicant, vehicular assault, or any combination of such offenses; or that the defendant has one or more prior convictions for the present offense of vehicular homicide; or that there was at the time of the offense 20 hundredths of 1 percent – of 2 percent – 20 hundredths of 1 percent or more of weight of blood alcohol in the defendant's blood; and that the defendant has one prior conviction for driving under the influence of an intoxicant or vehicular assault.

. . . .

[Driving While License Cancelled, Suspended, or Revoked]

The indictment charges that at the time the alleged offense was committed, that said defendant has been convicted of two prior offenses of driving while license suspended or revoked. The law provides for increased penalties for subsequent offenses. If you find from the proof that the ...State has shown under the law that the defendant is guilty of driving while license canceled, suspended, or revoked, you must write in your verdict whether defendant is a first, second, third, fourth, fifth, or sixth offender. Your verdict should – should you so find the defendant guilty of driving while license canceled, suspended, or revoked should be, We, the jury, find the defendant guilty of driving while license canceled, suspended, or revoked for a blank time, inserting the number of the offense.

Defendants have a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283,

---

[4] The trial court inadvertently omitted the word "aggravated" from this instruction. The written instructions given to the jury contained the word "aggravated."

287 (Tenn. Crim. App. 1998) (citing State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

After an indictment has been returned, its charge may not be broadened or changed except by action of the grand jury, as explained in Goodson, 77 S.W.3d at 244:

> Stirone requires that courts distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. . . . If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

Id. (quoting United States v. Adams, 778 F.2d 1117, 1123 (5th Cir. 1985)).

The trial court found the defendant's allegation without merit that the jury reached a "patchwork verdict" based on different offenses. Implicit in this holding is a finding that the jury instructions did not constructively amend the indictments.

Neither of these instructions constructively amended its respective indictment. The jury was not permitted to convict the defendant on a factual basis that modifies an essential element of the offense charged. The only proof introduced at trial on the charge of aggravated vehicular homicide related to the defendant's prior DUI convictions. The verdict conformed to the indictment, and the balance of the instruction was mere surplusage. State v. Wayne E. Mitchell, No. 01C01-9209-CR-00295, 1993 WL 65844, at *3 (Tenn. Crim. App. Mar. 11, 1993), perm. to appeal denied (Tenn. July 6, 1993). The instruction on driving while license cancelled, suspended, or revoked did not broaden or change the factual bases alleged in the indictment. The defendant is not entitled to relief on this issue.

## IV. Plain Error – Failure to Charge Essential Element

The defendant asks that we recognize as plain error the trial court's omission from the jury instructions of an essential element of the offense of leaving the scene of an accident. The trial court did not instruct on the requirement that the accused know or should reasonably have known that death resulted from the accident. The State responds that the defendant has waived the issue by not providing an adequate appellate record and that this issue is not susceptible to plain error review.

The trial court determined that the error, if any, was harmless:

> [I]t is a settled tenet of law that the general organization of jury instructions is a matter within the trial court's discretion. See United States v. Dunn, 805 F.2d 1275 (6th Cir. 1986). The trial judge's instructions will be read contextually as a whole, and the fact that some portions considered alone may be erroneous will not be considered prejudicial error on appeal, when the instruction read as a whole is correct. . . . Even if that [omitted] phrase was somehow essential to understanding the statute as a whole which it does not appear to be, the failure to instruct on an essential element of an offense may be deemed harmless error if the omitted element is supported by uncontroverted evidence. State v. Ducker, 27 S.W.3d 889 (Tenn. 2000); State v. Garrison, 40 S.W.3d 426 (Tenn. 2000) (harmless error analysis is available even when the trial judge omits from the jury instructions an essential element of the offense.)[.]

The defendant has not demonstrated that plain error analysis is appropriate. As the trial court observed, the failure to instruct on an essential element of an offense may constitute harmless error. We conclude, as did the trial court, that, under the facts of this case, any error in the instruction was harmless. Accordingly, "substantial justice" does not require that we conduct a plain error review of this matter. Ducker, 27 S.W.3d at 899.

### V. Sentencing

Finally, the defendant argues that the trial court committed error by sentencing him to a total of 52 years, five months, and 29 days, and imposing consecutive sentencing. He challenges the trial court's application of two enhancement factors and its finding that consecutive sentencing was warranted because the defendant is a dangerous offender. The State contends that the defendant has waived his claim as to the enhancement factors and that the record supports the imposition of consecutive sentences.

The jury found the defendant guilty of two counts of aggravated vehicular homicide, one count of felony leaving the scene of an accident, one count of misdemeanor leaving the scene of an accident, and one count of driving while license suspended or revoked, third offense. The trial court sentenced the defendant to twenty-five years for each count of aggravated vehicular homicide; eleven months and twenty-nine days for driving while license cancelled, suspended, or revoked; eighteen months for felony leaving the scene of an accident; and six months for misdemeanor leaving the scene of an accident. Finding that the defendant was a dangerous offender, the trial court ordered each sentence, except that for misdemeanor leaving the scene of an accident, to run consecutively to all others, resulting in an effective sentence of fifty-two years, five months, and twenty-nine days.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. §

40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2006).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## A. **Blakely** Error

The trial court found applicable two enhancement factors and no mitigating factors:

> The Court has examined the enhancement factors presented by the State, three in number and the Court finds two. Enhancement number one as we number those in our enhancement files here. The Court looks at this as a man who has for twenty years had various and sundry traffic offenses including three DUI's prior to this and if you want to count it, this was the fourth time he was driving while intoxicated. . . . The Court also notes and will accept enhancement number eight. The defendant in this matter, it appears he was repeatedly released, given chances by one Court to appear out to the workhouse and failed to appear.

The defendant argues that the trial court's finding of these two enhancement factors violates Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), which requires that any fact other than that of a prior conviction used to enhance a defendant's sentence be proven to a jury beyond a reasonable doubt. The State responds that the defendant has waived review of this issue by failing to raise it at the sentencing hearing or in his motion for new trial. We note that the defendant was sentenced on May 30, 2003, before Blakely was decided. He filed a timely motion for new trial on September 23, 2005, after the release of State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005), vacated, remanded by Gomez v. Tennessee, __U.S.__, 127 S. Ct. 1209 (2007), in which the Tennessee Supreme Court held that Tennessee's 1989 Sentencing Reform Act did not run afoul of the Sixth Amendment and Blakely. Therefore, the defendant could not reasonably have been expected to raise his Blakely claim at an earlier stage of the proceedings, and we will review his claim on its merits.

The defendant is correct that the trial court misapplied enhancement factor (8) because it was not proven to a jury beyond a reasonable doubt. See State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007) (Tennessee's pre-2005 Sentencing Reform Act violates the Sixth Amendment to the extent that it permits sentence enhancement based on judicially determined facts other than the fact of a prior conviction). However, the trial court's application of factor (1) is supported by the record and does not implicate the Sixth Amendment right to a jury trial because it was based on the defendant's prior criminal convictions. It appears that the trial court intended that great weight be given to enhancement factor (1), which could be the basis for imposing the sentences which it did. However, in view of the substantial sentences received by the defendant and the fact that one enhancement factor could not be applied, we remand for resentencing.

## B. Consecutive Sentencing

The trial court found that the defendant's sentences should be served consecutively based on the "dangerous offender" criterion:

> The Court finds that the defendant is a dangerous offender whose behavior indicates no regard for others in hesitation about committing, he doesn't hesitate about committing a crime in which the risk for human life is high. The Court further finds that it's necessary to protect the public from someone of this nature, as I've already stated. . . . And, the Court so finds and further finds that the facts of this case reasonably relate to the severity of the offenses. The Court will approve the verdicts of the jury.

As a general rule, consecutive sentences are imposed at the discretion of the trial court upon its consideration of one or more of the following statutory criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2)  The defendant is an offender whose record of criminal activity is extensive;

(3)  The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation; or

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2006).  These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.  Here, the trial court applied criterion (4):  "The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Id. § 40-35-115(b)(4) (2006).  Criterion four has been specifically discussed by our supreme court in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), where the court held:

[T]he imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

Id. at 939.

We conclude that the trial court made the requisite Wilkerson findings, and the record supports the imposition of consecutive sentences.[5]  We note that the record on appeal does not

---

[5] The defendant argues that we should not presume that the trial court's finding that "the facts of this case reasonably relate to the severity of the offenses" indicates that the court found that consecutive sentences reasonably relate to the severity of the case.  We disagree and believe that a fair contextual reading of the court's findings indicates that it found that the severity of the offenses warranted consecutive sentencing.

include judgments for the two convictions for leaving the scene of an accident. Accordingly, we direct that judgments be entered for these two convictions.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the defendant's convictions are affirmed, and the matter is remanded for resentencing as to the defendant's convictions for aggravated vehicular homicide and for entry of judgments as to the convictions for leaving the scene of an accident.

_____
ALAN E. GLENN, JUDGE