JACK BECK, ROSCOE ROBERTS and LUTHER E. FLOYD,
Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

672

Roy Asbury, Caryville, for plaintiffs in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

Plaintiffs in error, hereinafter called defendants, were jointly indicted and convicted of obtaining money under false pretenses and each was sentenced to serve three years in the State Penitentiary.

The first question raised by the assignments which we will dispose of is that the evidence preponderates against the verdict and judgment below. The State's proof presents a picture of a very clever scheme executed by these three defendants by which the prosecutor, Ike L. Moore, was bilked of $7,000 in money. Beck, operating under the alias of L. E. Berry, initiated the scheme by contacting Moore and inquiring whether he would be interested in purchasing a quantity of whisky at a reasonable price. He indicated that he was in a position to arrange for the transaction. Upon receiving a favorably reply from Moore, Beck returned a few days later to Chattanooga bringing with him Roberts, operating under the alias of Bradford. They then told Moore that the sheriff of Morgan County had the whisky for sale under a court order and told him that they would arrange for the purchase by Moore of 212 cases of confiscated whisky having Tennessee Stamps thereon. About a week later Roberts telephoned Moore to meet him at the courthouse in Wartburg so that the details could be worked out and agreed upon. Moore, accompanied by a friend, Smith, who had no interest in the transaction, met Roberts on the courthouse steps, as directed. He took Moore inside the courthouse where he introduced him to Floyd, who represented himself to be

the chief deputy sheriff of Morgan County by the name of Fred Pollard.

Floyd then stated that the whisky was taken from a wrecked truck and that the court had ordered it to be sold. He agreed to sell the 212 cases at $35 a case and guaranteed safe delivery of the whisky through the intervening dry territory to Hamilton County by the use of two other deputy sheriffs of Morgan County as escorts. The prosecutor testified also that Beck and Roberts guaranteed safe delivery to Hamilton County.

Some days later Roberts telephoned Moore to bring his own truck to Wartburg and pursuant thereto Moore borrowed $3,500 from his friend Miller and the two of them drove to Wartburg in a car and a third man drove the truck. In the middle of the afternoon they met Floyd in front of the courthouse in Wartburg and Floyd then directed Miller to have the truck driven to the side of the jail, which was a block or two away. Miller went with the truck and, in his absence, Floyd requested Moore to make the payment of the $7,000 which was done. Floyd then told Moore it would take about 15 minutes to procure the two deputies who would escort the truck and that he would have to go and find them. Floyd, having obtained the money, walked through the courthouse, drove away in a car and disappeared.

After waiting about an hour, Moore realized that he had been defrauded. He thereupon reported the affair to the sheriff's office. The next time Moore saw Roberts and Floyd, the latter two were in jail in Georgia and were afterwards convicted of a similar offense in that state.

Beck did not testify but Roberts and Floyd denied that they participated in the transaction and Floyd denied that he had ever seen Moore before. No one else testified in behalf of the defendants.

From the above recital, it is easy to understand why the jury found the parties guilty and it is clear that the evidence does not preponderate in favor of their innocence, so this assignment must be overruled.

There was a motion to quash the indictment on the ground that it did not allege facts constituting the crime, which motion was overruled. Predicated on that general statement, several grounds were assigned in the motion for a new trial which are now repeated in the several assignments of error, which in substance are as follows: That said indictment does not charge an offense either in the language of the statute or a statute and does not contain a description of a particular offense; that more than one offense may be carved out of the indictment and thus distinct and different offenses cannot be charged in the one count as was done in this indictment; that there was a misjoinder of parties in that the felonies attempted to be charged are in their nature several and personal.

The indictment is rather full and detailed and contains the necessary elements to charge a violation of the statute on false pretenses, T.C.A. sec. 39-1901, as set out in *State v. Morgan,* 109 Tenn. 157, 69 S.W. 970. Those elements are (1) the pretense, (2) the falsity of same, (3) the felonious and fraudulent intent, (4) the description of the property, and (5) the reliance of the victim upon the representations.

This indictment in substance, omitting much of the detail, states that the three men "did then and there unlawfully, feloniously and fraudulently obtain from Ike L. Moore the sum of $7,000 of the value of $7,000, in good and lawful money of the United States of America, greenback in various denominations, the property of the said Ike L. Moore, by means of unlawfully, feloniously, fraudulently and falsely pretending and representing to him" (then the detail about the arrangement for the bogus transaction) and then charges the respective aliases used and "upon the strength of said fraudulent and false pretenses, the said Ike L. Moore paid the said Luther E. Floyd the sum of $7,000 which pretentions and statements made by the defendants were wholly false and untrue and that the defendants (naming them) well knew the same to be false and untrue at the time they made them with the unlawful, felonious and fraudulent intent to appropriate the $7,000 to their own use and to deprive the true owner Ike L. Moore thereof, etc."

T.C.A. sec. 39-1903 expressly includes money within the definition of personal property. See also *Jim v. State,* 27 Tenn. 603; *Rowe v. State,* 164 Tenn. 571, 51 S.W.2d 505.

The latter case answers one insistence made in the brief that the prosecutor did not exercise ordinary prudence and caution. That case settled the rule in this State that it is no longer the rule that the representations must have been such as would be calculated to deceive a man of ordinary prudence and caution.

Speaking to the insistence that the indictment is duplicitous because other offenses may be carved out of same, our attention has not been called to a Tennessee

case directly in point nor have we been able to locate one. In *White v. State,* 157 Tenn. 446, 9 S.W.2d 702, it was held, indictment for marrying and cohabiting with second wife during former wife's lifetime was not duplicitous as charging both bigamy and unlawful cohabitation, bigamy being charged merely as an ingredient of the offense of unlawful cohabitation.

That case is cited in 42 C.J.S. Indictments and Informations sec. 170, p. 1127. That, however, seems to be a case of a lesser included offense. Section 174, however, seems to be more appropriate and it reads:

"A count which sufficiently charges the commission of an offense will not be held bad for duplicity because of allegations which tend to show the commission of distinct offenses and which are not sufficient to constitute a charge thereof or which are merely incidental to the offense charged."

The subject is discussed also in 27 Am.Jur. 683-684, Sec. 124. See particularly the three cases which are abstracted at the end of Note 16. Then in the Supplement will be found a case from Missouri, *State v. Hartman,* 364 Mo. 1109, 273 S.W.2d, 198, 202, which is very much in point. Therein it is said:

"Some elements of the offenses defined in sec. 561.450 are, as the defendant states, also common to independent offenses under other statutory enactments. We think, taking the information as a whole, it does not charge the defendant with (offenses set out under other statutes)."

*State v. Morgan,* 109 Tenn. 157, 69 S.W. 970, does not cover the point. We think, however, as above stated, this

indictment very clearly charges in substance a violation of the false pretense statute and that, even though other offenses either independent or lesser included offenses suggest themselves, the indictment is nevertheless not duplicitous.

■ Again, it is insisted that the indictment is not good because it avers that only Floyd received the money and all could not be jointly indicted because the act of each was a personal action or offense.

We find no merit in these two insistences because the proof by the State shows that all three were engaged in a common criminal enterprise through which they obtained Moore's money by their false pretenses and all would be equally guilty. T.C.A. sec. 39-109; *Watson v. State,* 184 Tenn. 177, 197 S.W.2d 802; *Turner v. State,* 187 Tenn. 309, 213 S.W.2d 281.

Then in *Pierce v. State,* 130 Tenn. 24, 44, 168 S.W. 851, 856, it is stated:

"An exception to the rule that a principal in the first degree must be present at the fact of the crime exists where two or more persons conspire or combine by concert of action to commit a crime, and it is done by one of them in the absence of the other or others. Here the crime is the act of all who so conspired."

We deem it unnecessary to discuss any other matters raised in the brief. All assignments of error are overruled and the judgment below is affirmed.