STATE of Tennessee, Petitioner,

v.

**Jessie D. McDONALD, Respondent.**

Supreme Court of Tennessee.

Jan. 19, 1976.

Rehearing Denied March 15, 1976.
Certiorari Denied April 26, 1976.
See 96 S.Ct. 1733.

Milton P. Rice, Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Nashville, for petitioner.

Jessie D. McDonald, pro se.

## OPINION

HENRY, Justice.

We granted certiorari in this case to consider the single question of whether the reliance of the victim upon the false representation or pretense is necessary to sustain a conviction under Section 39–1901, T.C.A.[1]

We respond in the negative.

The words "false pretense" include all cases of pretended buying, borrowing, or hiring, bailment or deposit, and all cases of pretended ownership, where the person obtaining possession intended, at the time he received the property, feloniously to steal the same.

1. Section 39–1901 T.C.A. reads as follows:
39–1901. *False pretense.*—Any person, who, by any false pretense, or by any false token or counterfeit letter, with intent to defraud another, obtains from any person any personal property, or the signature of any person to any written instrument, the *false making* of which is forgery, shall, on conviction, be *punished as in* case of larceny.

## I.

■ Respondent was convicted upon an indictment which charged that he obtained from the county court clerk of Davidson County a clear and unencumbered title to a 1972 Ford LTD automobile which was encumbered by a lien in favor of Purity Dairies Employees Federal Credit Union, by falsely and fraudulently representing that a lien in favor of the credit union upon the automobile had been released and that it was free of encumbrances.

Respondent's approach was incredibly ingenious and remarkably bold.

Under the name of Jessie D. McDonald, he applied for and received a loan from the credit union to finance the purchase of a new automobile. Upon closing he executed a note and security agreement. He then volunteered to take the documents downtown and apply for a certificate of title. This was the triggering false representation, and the credit union with astonishing credulity and naivete relied upon him.

The next day he presented himself at the County Court Clerk's Office, using the name of Jessie McDonald, II, and applied for a title certificate. In so doing he falsely and fraudulently gave his own address as the address of the credit union, with the result that the title was issued and mailed to the lien holder at respondent's address.

Subsequently, using the name of Jessie D. McDonald, II, he assigned the title to his father, Jessie D. McDonald, Sr. Two days thereafter, posing as Jessie D. McDonald, Sr. he presented himself at the County Court Clerk's Office and applied for a certificate of title. The certificate tendered to the clerk indicated that the vehicle had been sold to McDonald, Sr. and contained a notarized release of the lien, with the credit union's name stamped thereon. He made affidavit that the vehicle was free of encumbrances.

In order to avoid the sales tax, he executed an affidavit that the automobile was a gift from his son. In connection with the transfer of the license plates, he swore that Jessie D. McDonald and Jessie D. McDonald, Sr. were one and the same. This was true; all McDonalds were one and the same.

Subsequent to this he received a notice that payment was due and he wrote the credit union advising that his loan had been paid in full; that there was no lien on the automobile, and that he was no longer the owner.

This prosecution ensued.

## II.

Our review has been limited to the narrow issue of whether the victim must rely upon the false representation to support a conviction under the statute.

Section 39–1901, T.C.A. originated in Chapter 23 of the Public Acts of 1829 and Chapter 48 of the Public Acts of 1841–1842.

To our knowledge the first case construing these enactments is *McCorkle v. State,* 41 Tenn. 333 (1860). The Court declared the ingredients of the offense to be "obtaining the goods by false pretenses and with an intent to defraud." The Court made this significant comment:

> As was said by Lord Kenyon (3 Term Rep. 103), the statute creating this offense describes it in terms extremely general. It seems difficult to draw the line, and to say to what cases it shall extend; and therefore we must see whether each particular case, as it arises, comes within it. 41 Tenn. at 336, 337.

■ This conclusion reached more than a century ago continues to be valid. Not even a statute creating a criminal offense can spell out the specifics with mathematical certainty and, indeed, absolute precision is not required. Both common law concept and constitutional due process are satisfied when the statute informs all citizens as to what the state commands or forbids, and outlines the proscribed conduct with reasonable certainty. Its terminology must give fair warning, *Raley v. Ohio,* 360 U.S. 423, 79

S.Ct. 1257, 3 L.Ed.2d 1344 (1959), and must not be a trap for the innocent. *United States v. Cardiff,* 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952). Section 39–1901 meets these standards.

A significant recent case is *Beck v. State,* 203 Tenn. 671, 315 S.W.2d 254 (1958). There, the Court adopted the holding of *State v. Morgan,* 109 Tenn. 157, 69 S.W. 970 (1902) and reiterated that the elements of the offense of violating the statute on false pretenses are: "(1) the pretense, (2) the falsity of the same, (3) the felonious and fraudulent intent, (4) the description of the property, and (5) *the reliance of the victim* upon the representations." (Emphasis supplied). The state in brief correctly characterizes the fifth element (reliance) as dictum in view of the fact that the false representation was made by Beck directly to the victim, hence the Court was under no necessity to address this requirement. In *Morgan,* the Court, in passing upon the validity of the indictment, merely analyzed it under five headings, one of them being "reliance" of the victim. Again the Court did not directly address the necessity for reliance.

The latest pertinent pronouncement of this Court was in *Mullican v. State,* 210 Tenn. 505, 360 S.W.2d 35 (1962) wherein the Court enumerated the elements of the offense thusly:

> [T]he false representation made must be representation of a past or existing fact, whether it be by oral or written words or conduct, which is calculated to deceive, or intended to deceive, and does as a matter of fact deceive; and by means of which, by doing these things, the person who does it obtains something of value from the person injured without proper compensation. (citations omitted).
>
> . . . under this statute the intent to defraud is the gravamen or an essential element in the crime. 210 Tenn. at 511, 360 S.W.2d at 38.

Dicta aside, the courts of this state have never held that the reliance of the victim is an element of the offense proscribed in Section 39–1901. Indeed, there is an analogous line of cases to the contrary. As a matter of fact, *Beck, supra,* correctly treats as settled law that it is not necessary that the representation must be calculated to deceive a man of ordinary prudence and caution. As pointed out in 12 *Vanderbilt L.Rev.,* pages 1134, 1135 in commenting on this phase of *Beck,* "Regardless of its merits or demerits in tort law, it would seem strange indeed to let the necessity of such reliance remain in the law of crimes to work a kind of estoppel against victims of false pretenses who may be deficient in astuteness and vigilance in favor of the perpetrators thereof . . . " Would it not be equally strange to establish as a part of our law that the reliance of the victim is an essential element of the offense of obtaining money or property under false pretenses?

It is obvious that there must be reliance by someone, but in this modern day and age when fraud and deceit are practiced with sophistication and ingenuity a narrow construction such as this would be tantamount to a judicial conference of the proverbial "license to steal."

■■ We hold that the reliance of the victim is not an essential element of the offense "false pretense" as defined in Section 39–1901 T.C.A. We hold that our statute is satisfied, in this respect, when the person to whom the false representation is made or the false token or counterfeit letter is offered, relies upon the same to the ultimate detriment of the victim.

An excellent line of reasoning is contained in *Commonwealth v. Johnson,* 167 Ky. 727, 181 S.W. 368 (1916) [According to our own case of *State v. Higgins,* 148 Tenn. 609, 256 S.W. 875 (1923) the Kentucky statute is markedly similar to ours]. The Court said:

> The statute does not require that the false statement should be made to any particular person, or that it should be with the intention of committing a fraud

upon the person to whom the false statement was made. The offense is committed when the false statement is made, with the intention to commit a fraud, and money or property is thereby obtained.

\* \* \* \* \* \*

The purpose of the statute is to punish the perpetrators of fraud committed through any false pretense. The gist of the offense is the successful misrepresentation, *regardless of the person to whom it was made.* (Emphasis supplied). 181 S.W. at 370.

The judgment of the trial court is reinstated; that of the Court of Criminal Appeals is

Reversed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

OPINION ON PETITION TO REHEAR AND MOTIONS

HENRY, Justice.

The petition to rehear is respectfully overruled.

The motion to set aside the conviction is respectfully denied.

The motion for a stay pending application to the Supreme Court of the United States for certiorari is granted, providing the petition is timely filed. Pending the filing and disposition of said petition, the judgment of this Court will be stayed and defendant may remain upon his present bond.