**STATE of Tennessee, Appellee,**

v.

**Edward D. SMITH and Virgil Denny Barnes, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 25, 1980.

Permission to Appeal Denied by Supreme Court Feb. 23, 1981.

Ramon Womack, Nashville, for appellant, Smith, at trial only.

Dale Quillen, Nashville, for appellant, Smith, on appeal only, and for the appellant, Barnes, at trial and on appeal.

Lucinda Smith, Nashville, for appellants, Smith and Barnes, on appeal only.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., David L. Raybin, Asst. Dist. Atty. Gen., J. P. Apel, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

SCOTT, Judge.

On February 28, 1977, Mr. William A. Cobb, owner of I-65 Liquors, upon arrival at his store, discovered that it had been burglarized. All of the liquor from his store rooms, valued at approximately $12,000.00, was missing, along with the money from the cash drawer. Mr. Cobb called the Metropolitan Police Department and officers responded.

While the police were investigating the theft, a store employee, Kathy Woodward, suggested that they call the appellant, Mr. Barnes, to get his assistance in the investigation. Mr. Barnes was an employee of Westinghouse Credit Corporation, charged with the duty of repossessing merchandise. Apparently, Ms. Woodward thought that he was a detective and that he would be more able to recover the liquor than the police would be.

Mr. Barnes came to the store, examined the scene of the burglary and talked with Mr. and Mrs. Cobb and Ms. Woodward. Strangely, he inquired of Ms. Woodward whether the Cobbs had any money.

At about 6:30 P.M. that night, Mr. Cobb received an anonymous telephone call from a person who said that they had, "a whole house full of whiskey" and offered to return it to Mr. Cobb for a price. Mr. Cobb offered $3,000.00. The caller stated that they would call back at 11:30 or 12:00 the next day, and warned Mr. Cobb that someone would get killed if he brought the police into their dealings.

In spite of the threat, Mr. Cobb notified the police, went to the bank and withdrew $3,000.00 in cash, with the serial numbers recorded in advance by the bank. The money was in three packets of ten $100.00 bills per packet. He then substituted one dollar bills for all except the top bill in each packet, making the actual total $327.00. The money was placed inside three bags.

At about 5:30 P.M. on March 1, 1977, Mr. Cobb received another telephone call in which he was instructed to put the money in a hole in the back wall at the Sears Roebuck parking lot on Lafayette Street in Nashville, two or three blocks from the liquor store. Mr. Cobb, in the company of a detective posing as a nephew, complied. Police officers kept the ransom money under surveillance. Nobody came for the money, so, at 9:00 P.M. the officers told Mr. Cobb to go back and get his money. He did so.

The next day, March 2, 1977, the appellant, Mr. Barnes, again came to the liquor store at 2:30 P.M. and again at 4 or 5:00 P.M. He inquired about the progress of the investigation. Mr. Cobb told him that the police wanted him to stay out of it.

At 6:13 P.M. that night, another anonymous telephone call was received. Mrs. Cobb answered the telephone and she was instructed to make another drop at the wall. The calling party did not hang up the telephone, but held the circuit open so that Mr. and Mrs. Cobb could not call the police. However, he sent a friend to the telephone booth across the street. The friend notified the police. Earlier, South Central Bell Telephone Company had placed line identification equipment on the liquor store telephone and the call was traced to a pay telephone at Sears' Lafayette Street store.

Within fifteen minutes after the call was received, Mr. Cobb made the second drop of the money at the wall at Sears. In response to Mr. Cobb's friend's telephone call, police officers resumed the stake-out at the Sears parking lot. About two minutes after the stake-out detective arrived, he saw a car slowly driving beside the wall. The passenger got out of the car, went to the wall, got something, and returned to the car. The detective radioed uniformed officers in a marked car who were specifically patrolling the area to help with this case. They spotted the car as it was leaving the Sears parking lot going East toward the store and I-65. They spotted the car with

their blue lights. The appellant, Mr. Barnes, was the driver and the appellant, Mr. Smith, was the passenger. Mr. Smith, a deputy sheriff, got out of the car as soon as it was stopped, held up the money, which he had already removed from the bags and said, "I got the old man's money back".

The police officers then went back to the liquor store and inquired of Mr. Cobb as to whether he had given anyone the authority to remove the money from the wall. Being assured that he had not, the appellants were placed under arrest.

Their indictment and trial followed. They were found guilty of obtaining money under false pretenses in violation of TCA, § 39–1901, and both were sentenced to not less than nor more than three years in the state penitentiary. This appeal ensued.

They have presented three issues for review.

First, they have launched a broadside attack on the indictment, contending that (1) it failed to give them notice of the offense with which they were charged; (2) it failed to allege the elements of the offense of obtaining money by false pretenses as set forth in TCA, § 39–1901; and, finally, that the indictment failed to allege which of the appellants committed the criminal act. All of these issues are meritless.

The indictment in this case, after the standard introductory language charged:

That Edward D. Smith and Virgil Denny Barnes, Jr. of said County, heretofore, to wit, on the _____ day of February, 1977/and prior to the return of this indictment with force and arms, in the County aforesaid, unlawfully, feloniously and fraudulently, and with the felonious intent to defraud William and Loretta Cobb, d/b/a I–65 Liquors, did obtain from William and Loretta Cobb, d/b/a I–65 Liquors, $324.00 in good and lawful currency of the United States of America the property of William and Loretta Cobb, d/b/a I–65 Liquors, by means of a certain false pretense then and there made by the said defendants Edward D. Smith and Virgil Denny Barnes, Jr. to the said victims William and Loretta Cobb, d/b/a I–65 Liquors, whereby the said defendants Edward D. Smith and Virgil Denny Barnes, Jr., knowing that a large quantity of intoxicating liquors had been stolen from the said victims William and Loretta Cobb, d/b/a I–65 Liquors, during a burglary thereof, falsely and fraudulently represented to said victims by means of anonymous telephone calls that said large quantity of liquor would be returned to said victims for a cash payment of $3,000.00 and in said calls a specific location was given said victims as to where they should deliver said sum of $3,000.00, which representation that the liquor described aforesaid would be returned was false and untrue and was made by the said defendants Edward D. Smith and Virgil Denny Barnes, Jr. with the fraudulent and felonious intent to deprive William and Loretta Cobb, d/b/a I–65 Liquors, of their personal property and thereby caused the said victims William and Loretta Cobb, d/b/a I–65 Liquors, to rely on said false and fraudulent representation and to deliver said personal property to the defendants Edward D. Smith and Virgil Denny Barnes, Jr., which act of obtaining money by false pretenses is denounced and condemned (sic) by Section 39–1901, Tennessee Code Annotated, and is against the peace and dignity of the State of Tennessee.

■ Article I, § 9, Tennessee Constitution, provides that a criminal defendant hath the right to demand the nature and cause of the accusation against him. It is a matter for the legislature's determination as to what shall constitute the accusation, in what form the crime shall be charged. *State v. Stephens*, 127 Tenn. 282, 154 S.W. 1149 (1913).

Via TCA, § 40–1802, the legislature has provided that, "(t)he indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; ..."

The test for the sufficiency of an indictment is whether it contains the elements of the offense intended to be charged; sufficiently apprises the defendant of what he must be prepared to meet; and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. *Inman v. State*, 195 Tenn. 303, 304–305, 259 S.W.2d 531, 532 (1953).

The indictment in this case clearly and with great detail sets forth the contentions that the appellants needed to be prepared to meet. In addition, the indictment is sufficiently detailed that in case other proceedings are again brought against either for this offense, they could plead former conviction. The only real question is whether the indictment contains all of the elements of obtaining money or property by false pretenses.

TCA, § 39–1901, defines the offense of false pretenses as follows:

> Any person, who, by any false pretense, or by any false token or counterfeit letter, with intent to defraud another, obtains from any person any personal property, services, labor, or the signature of any person to any written instrument, the false making of which is forgery, shall, on conviction, be punished as in case of larceny.
>
> The words "false pretense" include all cases of pretended buying, borrowing, or hiring, bailment or deposit, and all cases of pretended ownership, where the person obtaining possession intended, at the time he received the property, feloniously to steal the same.

The elements of this offense are: (1) the making, with intent to defraud of a false representation of a past or existing fact; (2) the representation was calculated to deceive the person to whom it was made and did in fact deceive that person; (3) the false pretense was capable of defrauding; (4) the defendant obtained something of value from the injured person without giving just compensation; and (5) the thing obtained was valued at more than or less than $100.00 (now $200.00) (as for larceny, the value will determine the punishment). T.P.I.—Crim. 17.01.

The appellants contend that the missing element is the allegation that they made a false representation of a past or existing fact. To sustain a conviction of false pretense, there must be a statement of *some existing fact,* (emphasis in original opinion) and not a mere promise of something to be done in the future. *Canter v. State*, 75 Tenn. (7 Lea.) 349, 351 (1881).

However, when a false promise is coupled with a false statement of fact, the two are taken together as a fraudulent pretense. Both constitute the inducement. For example, when a defendant falsely represented that he was a pension agent, coupled with his promise that he would obtain a pension for the defrauded party, the offense was complete. Likewise, when a defendant falsely represented that he had goods in the possession of a railroad company and needed money to pay the freight thereon, coupled with his promise to repay the money to the defrauded party upon the arrival of the goods, the offense was made out. When a defendant falsely represented to an unmarried woman that he was a single man, coupled with his promise that he would use the money obtained from her in furnishing a house for them to live in and then would marry her, the offense was completed. *Cook v. State*, 170 Tenn. 245, 94 S.W.2d 386, 388 (1936), citing cases.

In this case the indictment sets forth twice the statement that the liquor "would be returned" for a cash payment to the appellants. By any reasonable interpretation, this language charged that the appellants falsely represented that they had possession of the stolen whiskey and had the present ability to return it in the event there was compliance with their conditions.

There is no requirement that a joint indictment set forth the specific acts committed by each appellant. In *Beck v. State*, 203 Tenn. 671, 315 S.W.2d 254, 257 (1958), another false pretenses case, our Supreme Court held that when the proof shows that

the parties were engaged in a common criminal enterprise they would all be equally guilty. There is no requirement that the acts of those engaged in such a joint enterprise be particularly set forth in the indictment.

 The indictment was sufficient and these issues have no merit.

Next the appellant contends that the trial court erred in admitting a tape recording into evidence. The recording was made by Mrs. Cobb when she received the second anonymous telephone call. She had been given the tape recorder with a telephone attachment by one of the detectives investigating the case. She identified her voice on the tape and three police officers, who had known Mr. Smith for periods ranging from fifteen to twenty-seven years, identified his voice on the tape as the anonymous caller.

As in *Stroup v. State,* 552 S.W.2d 418, 420 (Tenn.Cr.App.1977), the tape itself was properly identified, the conversation recorded thereon was shown to be an accurate reproduction of the conversation, and the voices were identified. The tape recording was, therefore, admissible.

The appellants contend that portions of the tape were unclear. Since neither the tape nor any other exhibits was included in the record on appeal, we are unable to evaluate the technical quality of the recording. In *State v. Fisher,* (Tenn.Cr. App., filed at Knoxville, October 2, 1980), tape recordings were partially inaudible. However, this Court held that the tape recordings were admissible since the trial judge felt that they were of sufficient quality. Without the tape in the record, the trial judge's ruling cannot and will not be disturbed. Once the tape recording is admitted by the trial judge, it is for the jury to determine whose voices are on the tape and the weight to be given to statements recorded thereon.

There was no error in the admission of the tape recording.

Finally, the appellants challenge the sufficiency of the evidence.

From the foregoing recitation of facts, it is clear that a rational trier of fact could find the appellants guilty of obtaining money by false pretenses beyond a reasonable doubt. Rule 13(e), T.R.App.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979).

The judgment is affirmed.

O'BRIEN and DAUGHERTY, JJ., concur.