IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 17, 2021 Session

**STATE OF TENNESSEE v. JOSEPH COX**

**Appeal from the Criminal Court for Knox County**
**No. 111288    Bobby R. McGee, Judge**

_____

**No. E2020-00018-CCA-R3-CD**

_____

The Defendant, Joseph Cox, was convicted of assault, a Class A misdemeanor, by a Knox County Criminal Court jury. *See* T.C.A. § 39-13-101(a)(1) (Supp. 2016) (subsequently amended). The trial court sentenced the Defendant to eleven months, twenty-nine days, with sixty days to be served in jail and the balance to be served on probation. On appeal, the Defendant contends that (1) the trial court erred in denying his motion to dismiss the presentment because the State failed to comply with a procedural step in charging him by presentment and because the child abuse statute is unconstitutional,[1] (2) the trial court erred in its jury instructions, and (3) the court erred in imposing split confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Eric Lutton, District Public Defender; Kathryn Fraser and Carter Pack, Assistant District Public Defenders, for the Appellant, Joseph Cox.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Branton, Assistant Attorney General; Charme P. Allen, District Attorney General; Nathaniel Ogle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's conviction relates to his spanking his then-girlfriend's son with a belt on May 1, 2017, leaving bruises on the child's legs and buttocks, which the victim's

---

[1] The Defendant was convicted of assault as a lesser-included offense of child abuse.

mother discovered on May 3. The victim was days shy of his sixth birthday at the time of the incident.

At the trial, the State's evidence showed that the victim's mother and the Defendant became involved in a romantic relationship and that after a couple of months, the victim's mother and the victim moved into the Defendant's mother and stepfather's house, where the Defendant and the Defendant's sister also lived and where the Defendant's child from another relationship lived part-time. The Defendant sometimes provided childcare for the victim while the victim's mother was at work.

The victim's mother testified that she did not give the Defendant permission to discipline the victim. She acknowledged that she had spanked the victim but denied that she had spanked him with a belt or other object and did not recall having ever spanked him while she lived at the Defendant's mother and stepfather's house. She discovered bruises on the victim's legs and buttocks when she helped him get out of a shower on May 3, 2017. The Defendant later acknowledged to the victim's mother that he had spanked the victim three times with a belt on May 1, which the victim's mother stated the Defendant had not disclosed previously. The victim's mother stated that she had not authorized the Defendant to discipline the victim and that he was supposed to tell her if a disciplinary issue arose in order for her to address it.

The victim testified that the Defendant spanked him with a belt in response to the way the victim wore a towel after a shower. The victim did not know how many times the Defendant struck him and said the Defendant tried to hold him down during the incident. The victim said that the spanking hurt but that he did not tell his mother about it because he was excited about his upcoming birthday, which other evidence showed was on May 3, 2017. He said that on his birthday, his mother saw bruises on his "private" when she brought him a towel after he showered. He said he did not know he had bruises but that his bottom was "a little sore." He said no one else spanked him between the day the Defendant spanked him and his mother's discovery of the bruises on his birthday. He said his mother never spanked him with a belt or spoon but also said he could not recall if she had ever spanked him.

A law enforcement officer testified that the Defendant admitted spanking the victim three times with a belt and that the Defendant stated he was unaware of anyone else spanking the victim between May 1 and May 3, 2017. The officer said the Defendant stated he had spanked the victim on two earlier occasions in the victim's mother's presence and that the victim's mother had spanked the victim with a wooden spoon, screamed at the victim, and yanked the victim by his arm. The officer said the victim's mother denied that she spanked the victim with a wooden spoon.

-2-

The Defendant presented evidence that his stepfather had seen him discipline the victim, including spanking the victim with an open hand on two occasions, in the victim's mother's presence. The Defendant's stepfather testified that the spankings had not been excessive. He said the victim's mother did not appear upset when the Defendant spanked the victim. The Defendant's stepfather stated that he had seen the victim's mother spank the victim with an open hand and with a wooden spoon. He said the Defendant admitted spanking the victim with a belt.

The Defendant's mother testified that she had seen the victim's mother spank the victim with a wooden spoon twice. She said she had witnessed the Defendant's disciplining the victim by placing the victim in time-out or taking away the victim's tablet computer but that she had never seen the Defendant spank the victim. She said she was out of town on the day the victim's mother discovered the bruises but that she spoke to the victim's mother by telephone and told her to call the police within three days or the Defendant's mother would do so.

After receiving the proof, the jury found the Defendant not guilty of the charged offense of child abuse but convicted him of the lesser-included offense of misdemeanor assault. At the sentencing hearing, the trial court imposed the eleven-month, twenty-nine-day sentence and ordered split confinement consisting of sixty days in jail and the balance on probation. This appeal followed.

# I

## Denial of Motion to Dismiss

The Defendant contends that the trial court erred in denying his motion to dismiss the presentment. He argues, first, that the State failed to comply with a procedural prerequisite in charging him by presentment with child abuse. Second, he argues that the child abuse statute is unconstitutionally vague. Finally, he argues that the statute is unconstitutional as applied to him because it violates his rights to chastisement of a child and to free exercise of religion.

### A. **Procedural Defect**

The Defendant argues that the child abuse statute requires, in cases involving allegations of unreasonable corporal punishment, that the charging instrument shall have attached either a copy of a report prepared by a law enforcement officer or independent medical verification of injury to a child victim. *See* T.C.A. § 39-15-401(d)(1) (2014) (subsequently amended). He claims that the trial court erred in denying his motion to dismiss the presentment against him for noncompliance with Code section 39-15-

401(d)(1). The State counters that the trial court did not err in denying the motion to dismiss.

As relevant here, Code section 39-15-401(d)(1) provides:

Any court having reasonable cause to believe a person is guilty of violating this section shall have the person brought before the court, either by summons or warrant. No arrest warrant or summons shall be issued by any person authorized to issue the warrant or summons, nor shall criminal charges be instituted against a child's parent, guardian or custodian for a violation of subsection (a) [criminalizing child abuse and child neglect], based upon the allegation that unreasonable corporal punishment was administered to the child, unless the affidavit of complaint also contains a copy of the report prepared by the law enforcement official who investigated the allegation, or independent medical verification of injury to the child.

In pertinent part, Code section 40-2-104 provides the following regarding the means by which a criminal prosecution may be initiated:

A prosecution is commenced, within the meaning of this chapter, by finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

This court has said that any defect in a warrant is cured by a valid indictment. *See Bruce Elliott v. State*, No. M2018-00808-CCA-R3-HC, 2018 WL 6528712, at *2 (Tenn. Crim. App. Nov. 15, 2018), *perm. app. dismissed* (Tenn. Apr. 11, 2019); *Bobby Lee Scales, Jr. v. Dwight Barbee, Warden*, No. W2012-00163-CCA-R3-HC, 2012 WL 4017375, at *1 (Tenn. Crim. App. Sept. 12, 2012), *perm. app. denied* (Tenn. Feb. 12, 2013); *cf. State v. Campbell*, 641 S.W.2d 890, 893 (Tenn. 1982) (holding that double jeopardy principles do not bar a subsequent prosecution if an earlier prosecution was commenced by a void warrant).

In *State v. Susan Wallace*, No. W2005-02235-CCA-R9-CD, 2006 WL 1440369, at *3 (Tenn. Crim. App. May 24, 2006), *perm. app. denied* (Tenn. Oct. 16, 2006), a panel of this court faced a similar situation involving allegations of unreasonable corporal punishment administered by a teacher. Similar to the child abuse statute, the School Discipline Act required that no action taken by a teacher or principal provided a basis for "'issuance of an arrest warrant or for the pressing of criminal charges'" unless an

-4-

investigative report and independent medical verification of injury is first presented to the judge or magistrate. *See Susan Wallace*, 2006 WL 1440369, at *1 (quoting T.C.A. § 49-6-4105(a)). The *Susan Wallace* defendant was charged first by criminal complaint and, after a preliminary hearing, was bound over to the grand jury and charged by indictment. *See id.* She moved to dismiss the indictment on the basis that "the pressing of criminal charges" included an indictment and, because the documentation required by the statute had not been filed, prosecution of her was barred. *Id.* The trial court held that any initial defect in the State's compliance with the procedural requirements was cured by the grand jury's return of an indictment. *See id.* at *2. On interlocutory appeal, a panel of this court agreed. *See id.* at *3.

Previously, the Attorney General has opined that Code section 39-15-401's procedural requirement that documentation be presented to the judge or magistrate does not prevent a grand jury from initiating charges. Tenn. Op. Atty. Gen. 98-203, 1998 WL 851335, at *1 (Oct. 28, 1998). "[Tennessee Code Annotated] § 39-15-401(b)(1) [now subsection (d)(1)] concerns the issuance of arrest warrants or summonses, and is inapplicable to prosecutions initiated by grand juries. Indictments are always an appropriate means by which a criminal prosecution may be commenced." *Id.* at *3. Similarly, the Attorney General has opined that the documentation prerequisite applies only to the issuance of a warrant or summons and "does not restrict an officer's ability to make a warrantless arrest when the officer has trustworthy information sufficient to warrant a prudent man in believing that the defendant has committed or was committing an offense." *Id.* Although not controlling, the Attorney General's previous interpretations of this statute, outside the context of an active criminal case, provide guidance.

Turning to the present case, the Defendant complains that the presentment charging him with child abuse failed to contain the statutorily compelled report of law enforcement or a medical verification of injury. He argues, as did the defendant in *Susan Wallace*, that the grand jury's action did not cure the State's earlier failure to follow the statutory procedure. Upon review, we adhere to the generally accepted rule that, to the extent a defect may exist in the affidavit of complaint accompanying a warrant, subsequent grand jury action, such as the return of a presentment in the present case, cures the defect. *See Bruce Elliott*, 2018 WL 6528712, at *2; *Bobby Lee Scales, Jr.*, 2012 WL 4017375, at *1. Thus, we do not read Code section 39-15-401(d)(1) to prohibit a grand jury from returning a child abuse presentment premised upon alleged unreasonable corporal punishment in the absence of a report prepared by a law enforcement officer or an independent medical verification of injury to the alleged victim. Rather, the statute's documentation requirement applies when a judge or magistrate is called upon to issue a warrant or summons for a defendant's arrest for child abuse charges. As a result, the trial court did not err in denying the motion to dismiss the presentment, and the Defendant is not entitled to relief on this basis.

## B. Constitutionality of the Statute

The Defendant argues that the child abuse statute is unconstitutional because (1) it is unconstitutionally vague for failing to define sufficiently the prohibited conduct, (2) it infringed upon his right to raise a child with whom he stood *in loco parentis* at the time of the offense, and (3) it infringed upon his right to free exercise of religion in disciplining his children and children with whom he was *in loco parentis*.

The Defendant acknowledges that he was acquitted of child abuse but argues that the same principles apply to his conviction of the lesser-included offense of assault. To the extent that the Defendant challenges the constitutionality of the child abuse statute, the issue is moot by virtue of his acquittal of that crime. *See, e.g.*, *Sharp v. O'Rear*, 412 S.W.2d 633, 634 (Tenn. 1967) (holding that a defendant's challenge to the constitutionality of a statute directing an arresting officer to take a defendant's driver's license at the time of an arrest for driving under the influence and to deposit it with the clerk of the court became moot upon the defendant's acquittal of driving under the influence); *State v. Bennett*, 798 S.W.2d 783, 786-87 (Tenn. Crim App. 1990) (holding that an issue regarding the denial of a motion to strike an aggravating circumstance for imposition of the death penalty in a first degree murder prosecution was moot because the jury acquitted the defendant of first degree murder and convicted him of the lesser-included offense of second degree murder, noting that the issue was not one of "great public interest" or one which would "evade review if not addressed"). Thus, our review is limited to the Defendant's challenges to the assault statute by virtue of its status as a lesser-included offense of child abuse.

### 1. Vagueness

A criminal statute must comport with due process of law. U.S. Const. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law"); Tenn. Const. art. I, § 8 ("[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."). Due process compels that a criminal statute must provide "fair warning" of its proscribed conduct, whereby a person may understand and avoid the conduct which is prohibited by the statute. *State v. Thomas*, 635 S.W.2d 114, 116 (Tenn. 1982); *see State v. Pickett*, 211 S.W.3d 696, 704 (Tenn. 2007). A criminal statute "may be facially vague if it authorizes and encourages arbitrary and discriminatory enforcement." *State v. Burkhart*, 58 S.W.3d 694, 699 (Tenn. 2001). A criminal statute which prohibits an act "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Leech v. Am. Booksellers Ass'n, Inc.*, 582 S.W.2d 738, 746 (Tenn. 1979). However, our supreme court has recognized the "inherent vagueness" of statutory language. *Pickett*, 211

S.W.3d at 704. "[A]bsolute precision" is not required of statutory language. *State v. McDonald*, 534 S.W.2d 650, 651 (Tenn. 1976).

Our supreme court has said that statutory interpretation requires a court to "first ascertain and then give full effect to the General Assembly's intent and purpose." *Waldschmidt v. Reassure America Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). The inquiry begins with examining the statutory language and applying its ordinary and plain meaning. *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 651 (Tenn. 1999). In this regard, the court must (1) give the words of the statute their natural and ordinary meaning, (2) consider the words in the context of the entire statute, and (3) presume that the General Assembly intended for each word to be given its full effect. *Waldschmidt*, 271 S.W.3d at 176. If a statute is clear and unambiguous, the court must enforce it as written without looking beyond the statute itself. *Id.* The question of the constitutionality of a statute is one of law, which we review de novo without a presumption of correctness. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

As relevant here, a defendant who knowingly causes bodily injury to another is guilty of assault. *See* T.C.A. § 39-13-101 (Supp. 2016) (subsequently amended). Tennessee has long recognized the right of parents to chastise their children. *See Johnson v. State*, 21 Tenn. 283 (1840); *see also State v. Toliver*, 117 S.W.3d 216, 232 (Tenn. 2003) (Birch, J., concurring). The right is limited to chastisement which "does not exceed the bounds of moderation and inflict cruel and merciless punishment." *Johnson*, 21 Tenn. at 283. To the extent that the parent's corporal punishment of the child exceeds reasonableness, the parent "is a trespasser, and liable to be punished by indictment." *Id.* The current child abuse statute contemplates the authority of parents to impose reasonable corporal punishment upon their children without criminal liability. *See* T.C.A. § 39-15-401(d) (establishing procedural prerequisites for issuance of an arrest warrant or summons "based upon the allegation that unreasonable corporal punishment was administered"). Thus, viewing assault as a lesser-included offense of child abuse, a defendant who knowingly causes bodily injury by imposing unreasonable corporal punishment upon a child is guilty of assault. *See* T.C.A. §§ 39-13-101, 39-15-401(d); *Toliver*, 117 S.W.3d 232 (Birch, J., concurring); *Johnson*, 21 Tenn. at 283.

The Defendant argues that he stood *in loco parentis* to the victim and that, by virtue of this relationship, he was privileged to inflict corporal punishment upon the victim. He argues, however, that Tennessee law is unconstitutionally vague as to that discipline which is permitted and that which is prohibited because it relies upon a reasonableness standard without further statutory elucidation. In other words, the Defendant's argument is that the assault statute is unconstitutional as applied to him. A challenge to a statute as being unconstitutional as applied to a defendant considers how the statute "'operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts

in other situations.'" *City of Memphis v. Hargett*, 414 S.W.3d 88, 107 (Tenn. 2013) (quoting 16 C.J.S., Constitutional Law § 187, at 274 (2005)).

Beginning with the Defendant's argument that he was *in loco parentis* to the victim, we note that whether a person stands *in loco parentis* to a child is a question of fact. *See State v. Sherman*, 266 S.W.3d 395, 407 n.13 ("Whether an in loco parentis relationship [is] established . . . is a question for the jury."). The record in the present case reflects that the trial court instructed the jury that a parent, guardian, or custodian could lawfully impose reasonable discipline, including reasonable corporal punishment, upon a child. The court also instructed the jury that corporal punishment was unlawful if it was not reasonably necessary or if it was excessive, under the circumstances. The court gave these instructions at the Defendant's request. Based upon the instructions given, the jury could find the Defendant guilty of assault on the basis that he knowingly caused bodily injury to the victim but (1) had no lawful right to impose corporal punishment on the victim because the Defendant was not a parent, guardian, or custodian, or (2) inflicted unreasonable corporal punishment, notwithstanding an *in loco parentis* relationship to the victim.

To the extent the jury had before it the option of convicting the Defendant based upon a finding that he had no *in loco parentis* relationship to the victim, the question of statutory vagueness regarding which corporal punishment was lawful and which was unlawful would not arise because the Defendant would have had no authority to impose corporal punishment upon the victim. Thus, to the extent that the jury may have convicted the Defendant of assault after concluding that he did not stand *in loco parentis* to the victim and therefore had no lawful authority to inflict reasonable corporal punishment, no constitutional question regarding the application of the assault statute to him exists. However, to the extent that the jury had before it the option of convicting the Defendant based upon a finding that he stood *in loco parentis* to the victim but imposed unreasonable corporal punishment which knowingly caused bodily injury, the Defendant's constitutional question is cognizable, and we will consider the issue in this context.

The question of whether a specific instance of corporal punishment was reasonable or unreasonable is one of fact to be determined by the jury. *Johnson*, 21 Tenn. at 284; *see Toliver*, 117 S.W.3d at 233 (Birch, J., concurring) (discussing appropriate jury instructions in a child abuse case regarding the right of a parent to discipline a child). "A statute is not unconstitutionally vague merely because it is based upon a 'reasonableness' standard." *State v. Harton*, 108 S.W.3d 253, 259 (Tenn. Crim. App. 2002) (citing *United States v. Ragen*, 314 U.S. 513, 523 (1942)). Other Tennessee criminal statutes employ a reasonableness standard. *See, e.g.*, T.C.A. §§ 39-13-101(a)(2) (Assault includes when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]"), 39-13-211(a) ("Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner[.]"), 39-13-402(a)(1) (Aggravated robbery

includes a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]"). Repeatedly, Tennessee courts have rejected constitutional challenges to statutes based upon vagueness arguments related to reasonableness standards. *See, e.g.*, *Harton*, 108 S.W.3d at 259-60 (upholding constitutionality of § 55-8-124, which proscribes a driver's following another motor vehicle "more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway"); *State v. Brandon Robert Vandenburg*, No. M2017-01882-CCA-R3-CD, 2019 WL 3720892, at *68 (Tenn. Crim. App. Aug. 8, 2019) (holding that section 39-13-605 was not unconstitutionally vague for proscribing photographing a person when the person "has a reasonable expectation of privacy" and without consent), *perm. app. denied* (Tenn. Jan. 15, 2020); *State v. Aaron Cooper*, No. 01C01-9708-CR-00368, 1998 WL 668263, at *1-2 (Tenn. Crim. App. Sept. 30, 1998) (holding that robbery statute is not unconstitutionally vague in that it proscribes conduct which includes "display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon").

As we have stated, to the extent that the jury's verdict rested on a finding that the Defendant was *in loco parentis* to the victim, the Defendant was limited to reasonable corporal punishment in disciplining the victim. The Defendant admitted he spanked the victim with a belt, although he claimed he only struck the victim three times. The photograph exhibits depict numerous long, dark bruises across the victim's legs and buttocks. The bruising patterns support a conclusion that the number of blows exceeded three. The victim testified that no one other than the defendant spanked him between May 1 and May 3, 2017. The limitation to reasonable corporal punishment provided fair notice to the Defendant that the extent of corporal punishment actually imposed was beyond that which was appropriate in the circumstances. To the extent that the jury relied upon a finding that the Defendant was *in loco parentis* to the victim, the assault statute is not unconstitutional as applied to the Defendant.

## 2. <u>Right to Parent</u>

Next, the Defendant argues that the prosecution infringed upon "his right to parent his children and children for whom he stands *in loco parentis*." The Defendant was prosecuted for child abuse of the victim, not a biological child of his own. Our consideration of this issue is limited to the prosecution which took place, not hypothetical facts. *See Hargett*, 414 S.W.3d at 107.

A parent has a fundamental right to rear his or her children without governmental interference, which right is afforded by the Fourteenth Amendment to the United States Constitution. *Meyer v. Nebraska*, 262 U.S. 390 (1923). In Tennessee, the right to parent one's child as one sees fit is also protected as a fundamental privacy interest, which right is afforded by Article I, Section 8 of the Tennessee Constitution. *See Hawk v. Hawk*, 855

S.W.2d 573, 578-79 (Tenn. 1993). The State may not intervene in a parent's child-rearing decisions in the absence of significant harm to the child in light of the parent's decisions. *Id.* at 581; *see Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 639 (Tenn. 2017).

As we have stated, Tennessee has recognized the right of a parent, or a person *in loco parentis*, to discipline a child with corporal punishment but has limited such corporal punishment to that which is reasonable in the circumstances. *See Johnson*, 21 Tenn. at 283; *see also Toliver*, 117 S.W.3d at 232-33 (Birch, J., concurring). The Defendant argues that because he was *in loco parentis* to the victim, the State unconstitutionally prosecuted him based upon an allegation of unreasonable corporal punishment. He fails to address, however, the constitutionally permissible limits upon any authority he had, to the extent the jury may have found that he was *in loco parentis*, in imposing corporal punishment upon the victim. As we have stated, the right to parent one's child without governmental intervention is limited to the situations in which the parent's conduct does not cause significant harm to the child.

We conclude that the State's prosecution of the Defendant based upon allegations of unreasonable corporal punishment did not violate any constitutional right the Defendant enjoyed as to the child-rearing of the victim. The Defendant is not entitled to relief on this basis.

### 3. Free Exercise of Religion

In his final constitutional argument, the Defendant posits that the trial court erred in denying his motion to dismiss the indictment because the prosecution infringed upon his right to free exercise of religion. He argues that his alleged Baptist faith, supported by Biblical teachings, endorses the use of corporal punishment. The record reflects that the Defendant alleged in pleadings and in arguments before the trial court that his faith supported the use of corporal punishment, but he presented no evidence to support the existence of these purported beliefs. Again, we limit our consideration of this issue to the facts of the case presented and decline to consider hypothetical facts. *See Hargett*, 414 S.W.3d at 107. The Defendant is not entitled to relief on this basis.

## II

### Jury Instructions

The Defendant contends that the trial court erred in denying his requested jury instructions (1) defining reasonable and unreasonable corporal punishment and (2) addressing the burden of proof regarding corporal punishment. The record reflects that, at the Defendant's request, the trial court gave the following instruction to the jury:

-10-

It is lawful for a parent, guardian, or custodian reasonably to discipline a child, and in doing so to administer reasonable punishment, including the infliction of reasonable corporal punishment.

However, it is unlawful for a parent, guardian[,] or custodian to inflict unjustifiable punishment upon a child. Corporal punishment is not justified and is therefore unlawful if the punishment was not reasonably necessary, or was excessive, under the circumstances.

The Defendant requested additional instructions which (1) identified factors to which the jury might look in determining whether the Defendant had engaged in a reasonable exercise of corporal punishment of the victim, and (2) informed the jury that the Defendant had no burden to prove that his exercise of corporal punishment had been reasonable and that the State had the burden to prove beyond a reasonable doubt that the corporal punishment had been unreasonable. The trial court denied the Defendant's request for these instructions.

To the extent that the trial court granted the Defendant's request for special instructions, those instructions were in accord Tennessee law and with Justice Birch's proposed instructions in *Toliver*. *See* 117 S.W.3d at 233. The record reflects that the trial court otherwise instructed the jury that the State had the burden to prove the allegations beyond a reasonable doubt. The jury was properly and adequately instructed as to the law. *See State v. Gilley*, 297 S.W.3d 739, 766 (Tenn. Crim. App. 2008) (holding that jury instructions are sufficient if they adequately state the law and that additional instructions are not required if requested by a defendant). The Defendant is not entitled to relief on this basis.

## IV

## Sentencing

In his final issue, the Defendant contends that the trial court abused its discretion in imposing a sentence involving split confinement. He argues that the court failed to articulate its reasons for the sentence and that this court should modify his sentence to probation.

Tennessee Code Annotated 40-35-302(b) (2019) governs misdemeanor sentencing, which requires a trial court to impose a specific sentence consistent with the purposes and principles of the Sentencing Act. Likewise, if a trial court orders a defendant to serve a sentence in confinement, the court must fix a percentage of the sentence a defendant is required to serve. *Id.* § 40-35-302(d). Although a trial court is not required to hold a

-11-

sentencing hearing, the court must permit the parties to address "the length of any sentence and the manner in which the sentence is to be served." *Id.* § 40-35-302(a). Trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations, and defendants convicted of misdemeanors are not presumed eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *see State v. Combs*, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); *see also State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Likewise, "there is no presumptive minimum sentence provided by law for misdemeanors." *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). In determining the percentage of service for misdemeanors, a trial court must consider the purposes and principles of sentencing and the enhancement and mitigating factors and must not impose arbitrary incarceration. T.C.A. § 40-35-302(d); *see Troutman*, 979 S.W.2d at 274 (stating that "while the better practice is to make findings on the record when fixing a percentage of a . . . sentence to be served in incarceration, a . . . court need only consider the principles of sentencing and enhancement and mitigating factors . . . to comply with the legislative mandates of the misdemeanor sentencing statute").

This court reviews challenges to sentences imposed for felony offenses relative to the manner of service within an appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). The same standard of review applies to questions related to probation or any other alternative sentence. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Although our supreme court has not considered whether the abuse of discretion with a presumption of reasonableness standard applies to misdemeanor sentencing determinations, it has stated that the standard "applies to all sentencing decisions," and this court has previously applied the standard to misdemeanor sentencing. *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014); *see State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *6-8 (Tenn. Crim. App. Mar. 14, 2013), *perm. app. denied* (Tenn. June 18, 2013); *see also* T.C.A. § 40-35-401(d) (2019) (stating that all sentencing issues raised pursuant to Code section 40-35-401(a) are subject to the same standard of review).

Generally, compliance with the purposes and principles of sentencing in a misdemeanor case requires a trial court to consider any evidence received at the trial and at any sentencing hearing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the relevant statutory considerations. *See* T.C.A. §§ 40-35-102 (2019), -103 (2019), -210 (2019).

At the sentencing hearing, no witnesses were called to testify, but the State offered a probation report and photographs of the victim's injuries as exhibits. The probation report reflects that the Defendant, a high school graduate, was employed at a restaurant and

lived with family members, including his daughter. The Defendant reported good health, recent marijuana use, and no history of alcohol or drug treatment. He had no record of criminal convictions. The Defendant submitted a sentencing memorandum containing assertions regarding his background and current family obligations. He also submitted letters attesting to his good character.

In his allocution, the Defendant apologized for his actions and said he now knew that spanking a child, particularly with a belt, was wrong. He said that he would like to continue being a productive member of society, that he had a full-time job, and that he provided care for his daughter.

The trial court found that the victim was particularly vulnerable because of age. *See* T.C.A. § 40-35-114(4) (2019). The court noted that the Defendant "appear[ed] . . . for the most part, [to have lived] a law-abiding life" and that the Defendant had been determined to be a suitable candidate for probation. The court said, however, that "the injuries inflicted upon the [victim] were great, beyond all reason." The court said that the level of force used against the five-year-old victim was "unconscionable." Based upon these findings, the court imposed split confinement of sixty days, with the balance of the eleven month, twenty-nine-day sentence to be served on probation.

The record reflects that the trial court, though not required by the sentencing statute, made findings regarding its rationale for sentencing the Defendant. The parties were afforded the opportunity to be heard on the issue of sentencing, and the court considered the sentencing statute and the facts of the case. The Defendant enjoyed no presumption in favor of probation. *See Troutman*, 979 S.W.2d at 273. We presume that the court's determination was reasonable, and upon review, we conclude that the Defendant has not shown that the court abused its discretion in imposing split confinement.

In reaching this conclusion, we have considered the Defendant's arguments that the trial court failed to consider the statutory mitigating factors, failed to reference the principles and purposes of sentencing, and failed to state its reasons for not granting full probation. However, the record reflects that the court was mindful of the relevant statutory considerations. Although the court did not specifically reference the statutory mitigating factors, the record reflects that it considered the Defendant's productive lifestyle, aside from the present case. Moreover, a trial court is not required to make detailed findings on the record in a misdemeanor case. *See id.* at 274. Finally, as we have stated, the Defendant was not entitled to a presumption in favor of full probation. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE