IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

## SEDRICK DARION MITCHELL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 18457     Forest A. Durard, Jr., Judge**

_____

### No. M2021-00783-CCA-R3-PC

_____

The pro se petitioner, Sedrick Darion Mitchell, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Sedrick Darion Mitchell, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

#### I.    Trial Proceedings

The petitioner, Sedrick Darion Mitchell, was convicted by a Bedford County Circuit Court jury of the sale and delivery of 0.5 grams or more of cocaine within 1,000 feet of a school and simple possession of cocaine. *State v. Sedrick Darion Mitchell*, No. M2017-00825-CCA-R3-CD, 2018 WL 5416033, at *1 (Tenn. Crim. App. Oct. 29, 2018). For his convictions, the trial court sentenced the petitioner as a career offender to an effective sentence of sixty years in confinement. *Id.* On direct appeal, this Court set forth the relevant facts and procedural history, as follows:

*Procedural History*

[The petitioner] was originally charged in a 15-count indictment with various charges of the sale or delivery of cocaine, possession of cocaine for sale or delivery, possession of marijuana for sale or delivery, and unlawful possession of drug paraphernalia. The case was set for trial; however, the relationship between [the petitioner] and his trial counsel degraded to the point that it was necessary to postpone the trial and substitute counsel. The State sought a superseding indictment, alleging that the activity occurred within a school zone. The first eleven counts charged offenses that occurred in December, 2014, and January, 2015. The last four counts of the indictment involved an incident alleged to have occurred on February 6, 2015. These are the counts which are the subject of this appeal. The record shows that at least three different times, [the petitioner's] appointed attorney was allowed to withdraw and substitute counsel was appointed. Two attorneys filed motions to suppress evidence seized in relation to the offenses that were the basis of counts 1-11, which the trial court denied. No motion to suppress was filed concerning the event that was the basis for counts 12-15. In an order dated December 8, 2016, the trial court severed counts 12-15 from counts 1-11 and reassigned counts 12-15 a new case number, which as noted above, is the subject of this appeal.

*Facts*

This appeal stems from a controlled drug purchase completed by an informant working for the 17th Judicial District Drug Task Force. The following evidence was adduced at trial. Drug Task Force Agent Jose Ramirez, of the Marshall County Sheriff's Department, testified that he and other agents met with the confidential informant ("C.I.") on February 6, 2015, to arrange a controlled purchase of cocaine from [the petitioner]. The C.I. told [the petitioner] that he had a "bill," meaning that he wanted to purchase $100 worth of cocaine. [The petitioner] agreed to meet the C.I. at a local Goodwill store.

Agent Ramirez searched the C.I. to ensure that he did not have any drugs, contraband, or other prohibited items in his possession. Agent Ramirez gave the C.I. five $20 bills after he recorded the bills' serial numbers. Agent Ramirez also gave the C.I. a digital recorder. The C.I. rode his bicycle to the Goodwill, and Agent Ramirez followed in his vehicle. Other agents set up around the Goodwill to observe the controlled buy. After

45 minutes to an hour of waiting for [the petitioner] to show up, the meeting place was changed to the America's Best Value Inn, which was located behind the Goodwill. Agent Ramirez followed the C.I. to that location, and the other agents relocated to conduct surveillance. Agent Ramirez testified that he saw the C.I. and [the petitioner] "go into a breezeway" together, where the exchange took place. Agent Ramirez testified that he did not see [the petitioner's] face because it was covered by a "zipped-up hoodie." After the exchange, the C.I. met Agent Ramirez at a pawn shop one block away from the motel. The C.I. gave Agent Ramirez a plastic bag containing crack cocaine and the digital recorder.

After his debriefing with the C.I., Agent Ramirez returned to the motel where the exchange took place. Other agents had placed [the petitioner] in custody in the lobby of the motel. [The petitioner] told agents that there was "some cocaine back in [the petitioner's motel] room folded in a small piece of paper." Agent Ramirez relayed that information to other agents who found the cocaine inside [the petitioner's] motel room.

The State introduced satellite photos, using the Tennessee Bureau of Investigation ("TBI") mapping software, showing that the location of the controlled buy was within 1,000 feet of the Thomas Magnet School. A special agent with the TBI's crime lab testified that the substance recovered from the controlled buy was determined to be 1.05 grams of cocaine. The substance recovered during the search of [the petitioner's] motel room was determined to be 0.45 grams of cocaine.

The C.I. acknowledged that he was "a drug addict," and he testified that he contacted the drug task force about becoming a confidential informant. The C.I. testified that on February 6, 2015, he called [the petitioner] to arrange a meeting for the purchase of cocaine. He testified that the exchange took place in the breezeway of the motel, and he identified [the petitioner] as the person to whom he gave the $100 provided by Agent Ramirez in exchange for a bag of crack cocaine. On cross-examination, the C.I. acknowledged that he was convicted in Carroll County in 2006 of two counts of attempted possession of less than 0.5 grams of cocaine for resale. He also acknowledged that he was on parole at the time of the controlled buy in this case. The C.I. also acknowledged that he was compensated $100 by the drug task force for his participation in the controlled buy.

Drug Task Force Agent Shane George assisted in surveillance of the controlled buy. After the controlled buy, Agent George observed [the

petitioner] "coming and going" from one of the rooms in the motel. Agent George watched [the petitioner] leave the motel room and walk to the lobby of the motel. Agent George placed [the petitioner] in custody in the lobby of the motel. Agent George testified that [the petitioner] consented to a search of the motel room he had been staying in. Agent George and Agent Timothy Joe Miller searched [the petitioner's] motel room and found cocaine inside a folded piece of paper. They used a key found on [the petitioner's] person to enter the motel room. Agent Miller testified that the same five $20 bills that were used in the controlled buy were found on [the petitioner's] person at the time of his arrest.

*Sedrick Darion Mitchell*, 2018 WL 5416033, at *1-2.

## II. *Post-Conviction Proceedings*

The petitioner subsequently filed a pro se petition for post-conviction relief, alleging the ineffective assistance of trial counsel both at trial and on appeal. While the petitioner made numerous allegations in the petition, the main allegation centered around trial counsel's failure to obtain the name and criminal history of the C.I. before trial. As a result, the petitioner also alleged trial counsel was ineffective during his cross-examination of the C.I. The post-conviction court appointed counsel who filed an amended petition,[1] and the petitioner's case then moved to the hearing phase which occurred in two parts. Trial counsel testified on December 19, 2019, and the petitioner testified on October 14, 2020. At the outset of the December hearing, the petitioner asked the post-conviction court to allow him to proceed pro se, to strike the petition filed by post-conviction counsel, and to only consider his pro se petition. The post-conviction court granted these requests, and the petitioner proceeded, pro se.

Trial counsel testified that he was appointed to the petitioner's case in June 2016, approximately six months prior to trial, after several attorneys were permitted to withdraw. In preparing the petitioner's case, trial counsel spoke to former counsel, reviewed all of the evidence provided in the case file, conducted both legal and factual research, and spoke to a Drug Task Force agent. Trial counsel stated that the facts of the petitioner's case were "[n]ot complex at all. . . . It was literally a discreet, single act, which occurred within moments before the arrest." According to trial counsel, the facts showed the petitioner participated in a controlled drug buy that was supposed to take place at a Goodwill.

---

[1] After the appointment of counsel, the petitioner continued to file numerous pro se motions related to his petition which the post-conviction court addressed. However, because none are particularly relevant to this appeal, we will not address them further and note, "a defendant in a criminal case may not proceed pro se while simultaneously being represented by counsel." *State v. Davis*, 141 S.W.3d 600, 615 n.12 (Tenn. 2004) (citing *Wallace v. State*, 121 S.W.3d 652, 655 n.2 (Tenn. 2003)).

However, when the petitioner did not meet the C.I. at the Goodwill, the controlled buy was moved to an America's Best Value Inn. Recorded phone calls between the petitioner and the C.I. verified the change in venue of the controlled buy, but trial counsel did not recall if the petitioner suggested the change. Trial counsel remembered "making a lot of hay about the fact that we moved from Goodwill, which would not have been anywhere near a school zone, to the hotel which was within a school zone."

Trial counsel explained his trial strategy was to identify that the State was being "duplicitous" for prosecuting the petitioner for participating in the controlled buy when the C.I. also "gave money in exchange for drugs." Trial counsel also stated that there were no evidentiary surprises during trial and that he successfully convinced the jury in one count to find the petitioner guilty of a misdemeanor drug conviction for simple possession rather than the indicted felony of possession for resale and delivery.

Trial counsel discussed the C.I. at length, stating he "press[ed] for the name of the C.I." throughout his representation of the petitioner. About five months prior to trial, trial counsel made an oral motion "to require the State to provide criminal background information on the [C.I.]" and filed a written "Motion to Compel the Identity of the Confidential Informant." The trial court granted the written motion, noting within its order that the State "announced that the identity of the [C.I.] was disclosed to [the petitioner's] previous counsel" and "that there was no issue with disclosing said identity to present counsel." The trial court denied the oral motion but ordered the State to provide trial counsel with the C.I.'s criminal history if the State had access to it. Both of the trial court's orders were entered into evidence.

Despite his attempts to learn the C.I.'s name, trial counsel did not receive the name until after the start of trial. Upon learning the name, the trial court allowed trial counsel to investigate the C.I.'s criminal history in the clerk's office. Trial counsel discovered the C.I.'s TOMIS[2] identification number and that he carried two, felony drug convictions. Trial counsel used this information during trial, stating he successfully impeached the C.I. with the two, prior convictions, the fact that the C.I. was on parole at the time of trial, and the fact that the C.I. was a paid informant. Trial counsel stated that not knowing the name of the C.I. was not such an impediment that he "could not perform to an adequate standard."

Trial counsel's testimony then turned to the petitioner's allegation that trial counsel was ineffective for failing to discover the C.I.'s complete criminal history which included, according to the petitioner, convictions for second degree murder, burglary, and theft. Trial counsel acknowledged that he did not know that the C.I. had a second degree murder conviction at the time of trial but stated he successfully impeached the C.I. during cross-

---

[2] Tennessee Offender Management Information System.

examination because "all that really mattered is he had a felony conviction and we got that before the jury." Trial counsel did not believe the State's entire case relied on the testimony of the C.I. However, he acknowledged that the C.I.'s testimony "was certainly a pivotal aspect of it." Finally, in relation to the C.I.'s criminal history and the petitioner's case, trial counsel stated: "The fact the [C.I.] may have had a murder conviction would not have any bearing on the fact [the petitioner] had [the C.I.'s] five $20 bills in [his] pocket when [he was] arrested." Trial counsel did not recall the petitioner's telling him during trial that officers did not find the $20 bills on him. Trial counsel also did not recall any conversations with the petitioner regarding certain transcripts the petitioner wanted from Rutherford County.

Regarding the audio recordings that were entered into evidence during trial, trial counsel stated that he was satisfied with the foundation the State laid when authenticating the recordings. Trial counsel further stated the recordings were "a two[-]edged sword. [They] could be used against you, yes, but [they] also could be used for you." Trial counsel explained that the recordings could be used "as a spring board to the jury to explain hey, there was no conversation on this tape, how do we know this was really [the petitioner] and not someone else." Trial counsel also stated the petitioner has a "very distinctive" voice and had the petitioner testified at trial, the jury would have had the opportunity to compare the petitioner's voice to the voice on the recordings.

Trial counsel explained that during trial, he objected to the State's attempt to introduce testimony from Agent Miller regarding Agent Miller's familiarity with the petitioner obtained through interviews he conducted with the petitioner on other drug charges. Trial counsel objected to the introduction of any reference to other charges and was able to exclude "quite a bit of that evidence." As a result, the State was only permitted to ask Agent Miller if he was familiar with the petitioner and the petitioner's voice.

Regarding the motion for a new trial, trial counsel stated he argued "typical arguments, sufficiency of the evidence, weight of the evidence, that type of thing." Regarding the direct appeal, trial counsel stated he did not raise any issues related to the C.I.'s criminal history, specifically the second degree murder conviction, because he did not think it was relevant. The petitioner presented trial counsel with a TBI report on the C.I.'s criminal history, which listed the C.I.'s prior convictions for second degree murder, burglary, and theft, and asked if trial counsel believed the petitioner would have received a not guilty verdict had he known the complete criminal history at trial. Trial counsel responded, "[n]o, not a chance." Trial counsel also stated that this issue was "purely speculative" because "there was near continuous observation of the alleged transaction and it was under wire the entire time." This concluded the first portion of the post-conviction hearing.

During the second portion of the post-conviction hearing, the petitioner testified on his own behalf primarily by reading portions of the trial transcript into the record. The transcripts were entered into evidence along with the "Motion to Disclose Confidential Informant" filed on February 4, 2015, and the transcript of the hearing on the motion for a new trial.

Similar to trial counsel, the petitioner's testimony focused on issues related to the C.I. and trial counsel's handling of the same. The petitioner testified that he never received the C.I.'s name and that he would have considered pleading guilty had the name been disclosed prior to trial. The petitioner testified that he believed trial counsel should have "objected and asked for a mistrial or a continuance" after the State indicated their intent to call the C.I. because trial counsel was not prepared to effectively cross-examine him.

Regarding the C.I.'s criminal history, the petitioner stated the jury was misled because trial counsel only impeached the C.I. with two, prior drug convictions. As a result, the petitioner stated the jury was "under the impression [the C.I.] was on probation for drugs, [when] [the C.I.] was on probation for murder." The petitioner testified that trial counsel should have been able to question the C.I. about why he was on probation.

The petitioner then entered the audio recordings into evidence, stated that trial counsel should have filed a motion in limine to exclude the recordings from trial, and asserted that the recordings should not have been admitted during trial "at all." The petitioner also stated that trial counsel should have objected when the C.I. testified that the petitioner was the other voice on the recordings.

The petitioner next asserted he was prejudiced by improper 404(b) evidence related to the recordings. According to the petitioner, trial counsel was ineffective for failing to object to the testimony of Agents Ramirez and Miller wherein they testified that they had spoken to the petitioner on prior occasions. As noted by the post-conviction court, trial counsel objected to this line of questioning as to Agent Miller during trial, and the trial court sustained the objection and instructed the jury to disregard the same.

The petitioner then testified that trial counsel was ineffective "for not filing a motion to sanction the State for failing to provide the name of the C.I. prior to trial." The petitioner testified he was "ambushed" at trial as a result and requested a new trial in order to be able to impeach the C.I. with the prior second degree murder, theft, and burglary convictions. The petitioner entered the TBI report for the C.I. into evidence along with transcripts of the closing arguments presented during trial.

Regarding the motion for a new trial, the petitioner testified that trial counsel was ineffective for not stating in the motion that they did not receive the name of the C.I. until

after trial had begun. He also argued that trial counsel was ineffective after trial for failing to perform a follow-up investigation into the C.I.'s criminal history. The petitioner asserted trial counsel "came to the [m]otion [f]or [a] [n]ew [t]rial [hearing] with nothing."

During cross-examination, the petitioner acknowledged that trial counsel elicited testimony from the C.I. regarding his two, prior felony drug convictions, that he was on parole when he engaged in the controlled buy with the petitioner, that he was on parole during trial, and that he was being paid for his work with the Drug Task Force. The petitioner admitted, however, that he did not have certified copies of the C.I.'s prior convictions.

Regarding the petitioner's issue with the agents and the C.I.'s testifying that they had previously heard the petitioner's voice, the petitioner testified that he "would not even attempt" to identify another person's voice and that he did not think anyone could identify another's voice absent training and expertise. The petitioner acknowledged that during the C.I.'s testimony, the C.I. stated that he had met the petitioner before and had been to his apartment. However, the C.I. never stated that he had engaged in prior drug transactions with the petitioner. The petitioner, however, stated the jury could infer that the two engaged in prior drug transactions because the jury was intelligent and could "read between the lines and they knew exactly what was being said, and that is what convicted me."

Upon its review, the post-conviction court issued a written order denying relief on June 7, 2021. The petitioner timely appealed.

***Analysis***

The petitioner contends the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal for issues related to the C.I., Agent Miller's testimony, the audio recordings, and the indictment. The petitioner also alleges the State committed prosecutorial misconduct surrounding its disclosure of the C.I.'s name and criminal history. In response, the State asserts the petitioner has waived his prosecutorial misconduct claims and failed to meet the burden required of him for post-conviction relief. Upon our review of the record and the applicable law, we affirm the ruling of the post-conviction court.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's

application of the law to the facts is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations de novo, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### i.  Prosecutorial Misconduct

The petitioner argues the State committed prosecutorial misconduct by failing to provide the name and criminal history of the C.I. prior to trial.  The State contends the petitioner has waived these issues for failing to challenge them on direct appeal.  Upon our review, we agree that the issues are waived.

"It is well established that a party may not raise an issue in a post-conviction petition that could have been raised on direct appeal."  *Christopher Lee Blunkall v. State*, No. M2017-01038-CCA-R3-PC, 2019 WL 104136, at *41 (Tenn. Crim. App. Jan. 4, 2019) (citing *State v. Townes*, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000), *overruled on other grounds by State v. Terry*, 118 S.W.3d 355 (Tenn. 2003)).   Under Tennessee Code Annotated section 40-30-106:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-106 (g)(1)-(2).  "[W]aiver is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995).  Here, the petitioner could have presented his issues of prosecutorial misconduct for our review on direct appeal.  Because the petitioner failed to do so, these issues are waived.  *Mitchell*, 2018 WL 5416033 at *2-5.  The petitioner is not entitled to relief.

### ii.  Ineffective Assistance of Counsel

#### a.  The C.I.

The petitioner asserts that trial counsel was ineffective for failing to learn the identity and criminal history of the C.I. prior to trial and that the post-conviction court erred

in finding he was not prejudiced by trial counsel's failure. The State argues the petitioner was not prejudiced, and we agree.

The record indicates trial counsel did not learn the name or criminal history of the C.I. until the first day of trial, despite "pressing for the name" and making pretrial motions requesting disclosure of both the name and criminal history. Regardless, upon learning the C.I.'s name, the trial court paused the trial and allowed trial counsel to research the C.I.'s criminal history in the clerk's office. In doing so, trial counsel discovered the C.I. had a TOMIS identification number and two, prior felony drug convictions. Trial counsel then used this information during cross-examination to impeach the C.I. In addition, trial counsel impeached the C.I. with the fact that the C.I. was on parole at the time of trial and was a paid informant. Trial counsel testified that he was prepared to cross-examine the C.I. and that he successfully impeached the C.I. during trial. Though trial counsel acknowledged he did not learn the C.I.'s complete criminal history, including the prior second degree murder, burglary, and theft convictions, trial counsel did not believe the complete history was needed for a successful impeachment. Trial counsel also stated that evidence of the C.I.'s complete criminal history had no bearing on the evidence of the petitioner's guilt presented at trial.

In denying relief on this issue, the post-conviction court determined that the petitioner was not prejudiced by trial counsel's failure to ascertain the name and criminal history of the C.I. prior to trial, stating "even had the [second] degree murder conviction been used to impeach [the C.I.] there is not a reasonable probability given the evidence taken as a whole the outcome of the trial would have been different." We agree. The petitioner has failed to demonstrate that he was prejudiced because the case against him was overwhelming. As detailed above, the controlled buy was recorded and surveilled by Drug Task Force agents. After the controlled buy, agents located five $20 bills on the petitioner's person that matched those marked by Agent Ramirez, and the C.I. had $100 worth of cocaine. Therefore, the petitioner has not established a reasonable probability that, had trial counsel impeached the C.I. with the second degree murder conviction in addition to his prior felony drug convictions, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694. The petitioner is not entitled to relief.

### b. *Agent Miller and 404(b) Evidence*

The petitioner asserts "that he should have been given a 404(b) hearing before the State, the C.I., and [Agent Miller] all brought in prior drug sales that were all severed from the drug case that he was on trial for." According to the petitioner, "the State painted a picture for the jury along with the C.I. and [Agent] Miller that the [petitioner] was meeting the C.I. around town and once or twice a week to sell the C.I. drugs." The State asserts this issue is without merit, and we agree.

- 11 -

The post-conviction court reviewed this issue and denied relief, stating that during trial, "no other previous criminal activity was disclosed" and the State "had the right to establish [Agent] Miller had familiarity with the [p]etitioner's voice on the audio." We again agree with the post-conviction court. The record indicates that trial counsel objected during Agent Ramirez's testimony regarding his familiarity with the petitioner, and the trial court sustained the objection. Thus, during Agent Miller's testimony, the State was limited to asking Agent Miller if he was familiar with the petitioner. The State, however, was not permitted to question Agent Miller as to how he was familiar with the petitioner. Accordingly, we discern no deficiency in trial counsel's handling of the testimony of Agent Miller regarding his familiarity with the petitioner. The petitioner is not entitled to relief. *Strickland*, 466 U.S. at 687; *see also Goad*, 938 S.W.2d at 370.

The petitioner also argues trial counsel was ineffective for failing to object to Agent Miller's "false" testimony wherein Agent Miller "falsely inform[ed] the jury that the [petitioner] was arrested with 'buy money.'" The petitioner alleges Agent Miller "made inconsistent statements" regarding whether he found "buy money" on the petitioner upon arrest. The petitioner asserts Agent Miller testified at the petitioner's probation revocation hearing "that he never got any contraband or 'buy money' off the [petitioner]" but then testified at trial that "'buy money' was seized from the [petitioner] when the [petitioner] was arrested."[3] The petitioner also alleges trial counsel was ineffective for failing to submit the transcript of his probation revocation hearing during trial in order to demonstrate Agent Miller's inconsistent statements and alleged perjury.

Upon our review of the record, we are precluded from fully reviewing this claim because the petitioner failed to introduce the probation revocation transcript into evidence during the post-conviction hearing, and it is not a part of the record on appeal. If this Court is unable to fully review an issue based on the petitioner's failure to include a full transcript, the issue has been waived. *See State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998) (failure to include trial transcript on appeal resulted in waiver of sentence challenge). Because the petitioner failed to provide a complete record on appeal, we cannot fully review the issue, and he has waived his allegation regarding Agent Miller's alleged perjury.

---

[3] The petitioner also asserts trial counsel was ineffective for failing to request relief under Tennessee Rules of Civil Procedure 60.02 regarding Agent Miller's alleged perjury. However, because the issue was not before the post-conviction court and no ruling was rendered, we are precluded from review. Issues not raised in the post-conviction petition cannot be raised for the first time on appeal. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). The petitioner has waived review of this issue.

Absent waiver, however, the petitioner is still not entitled to relief. As noted by the post-conviction court, "[t]here was no credible evidence submitted which indicated [Agent Miller's] testimony was perjured." Thus, the petitioner failed to prove this allegation by clear and convincing evidence, and he cannot meet the burden required of him for post-conviction relief. Tenn. Code Ann. § 40-30-110(f); *Strickland*, 466 U.S. at 687; *Taylor*, 968 S.W.2d at 905.

### c. The Indictment

Next, the petitioner asserts trial counsel was ineffective for failing to challenge the indictment for being "unconstitutionally vague." More specifically, the petitioner asserts "the elements that constitute the offense are not sufficiently alleged" in his indictment, "[t]here is no consistency in [his] indictment," and his "indictment did not include facts constituting the offense." The State contends the petitioner failed to show how trial counsel was ineffective on this issue "[b]ecause the petitioner did not introduce the indictment or ask trial counsel about it during the post-conviction hearing." Upon our review, we conclude this issue has been waived.

A motion alleging a defect in the indictment must be made prior to trial, "but at any time while the case is pending, the court may hear a claim that the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense." Tenn. R. Crim. P. 12(b)(2). In Tennessee, an indictment is sufficient that states "the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202. "Generally stated, an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997) (citing *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991); *VanArsdall v. State*, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); *State v. Smith*, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). "So long as an indictment performs its essential constitutional and statutory purposes, a defect or omission in the language of the indictment will not render the judgment void." *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000) (citing *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998)).

Here, the petitioner failed to introduce a copy of the indictment and failed to elicit any testimony during the post-conviction hearing to support his claim that trial counsel was ineffective for failing to challenge the indictment for being "unconstitutionally vague." Accordingly, this issue is waived, and the petitioner is not entitled to relief.

### d. The Audio Recordings

The petitioner also claims trial counsel was ineffective for failing to file a pre-trial motion to exclude the audio recordings and for failing to object during trial to the admission of the recordings into evidence. The petitioner argues the recordings prejudiced his case because there was "just silence" on them and, as a result, "the [recordings] had nothing to do with what the [petitioner] was on trial for and should not have been played." The State argues this was a matter of trial strategy, and thus, the petitioner is not entitled to relief. Upon our review, we agree with the State.

The post-conviction court reviewed this issue and stated:

> A proper foundation was laid for introduction of the [recordings]. In fact, when the prosecutor attempted to introduce the evidence early in the trial he was warned if the proper foundation was not laid and the evidence linked up then the evidence would be stricken or a mistrial declared.

> Trial counsel appears to have also considered the prejudicial effect of this piece of evidence. Trial [c]ounsel characterized the quality of the [recordings] as [a] "two edge sword" explaining the jury could just as well determine the [p]etitioner's voice was not discernable and disregard the [recordings].

> . . . .

> Trial counsel made a reasonable choice as it was likely the audio would be admissible anyway and he could then argue the [S]tate failed to admit evidence of the [p]etitioner's voice. There was ample other evidence for the jury to consider should they have disregarded the [recordings]. Trial counsel was not ineffective for this strategy.

Upon our review, we again agree with the post-conviction court. As noted on direct appeal, Agent Ramirez gave the C.I. a digital recorder prior to the controlled buy, and, after completing the controlled buy, the C.I. returned the recorder to Agent Ramirez. *Mitchell*, 2018 WL 5416033, at *1. At the post-conviction hearing, trial counsel testified that he was satisfied that the State laid a proper foundation before entering the recordings into evidence. Trial counsel also explained his strategy regarding the recordings, noting they were "a two[-]edged sword" that he believed the jury could have weighed in the petitioner's favor had the jury listened to the recordings and determined that they could not be certain the petitioner's voice was captured on them. Trial counsel's strategic and tactical choices

- 14 -

will not be second guessed when those choices are based on informed preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the record shows that after laying a proper foundation, the State presented the recordings to the jury for its review, and trial counsel used this evidence as a part of his trial strategy. We discern no deficiency in trial counsel's performance and need not reach the prejudice prong of the *Strickland* analysis as a result. 466 U.S. at 687. The petitioner is not entitled to relief.

### e. Motion for a New Trial

The petitioner argues trial counsel was ineffective at the motion for a new trial hearing because trial counsel "failed or refused to investigate the C.I. after trial," thus hindering his success at the hearing. The State asserts the petitioner has waived this issue for failing to present it in his petition. Absent waiver, the State argues the petitioner is not entitled to relief because the issue is without merit. We will address both waiver and the merits of the issue below.

Regarding waiver, we note, the petitioner raised this issue in his petition, therefore it is not waived. However, the petitioner failed to include the motion for a new trial as a part of the record on appeal though he did include the transcript of the hearing on the motion. Regardless, in denying relief, the post-conviction court reviewed the issue.[4] As a result, we will do the same.

The record indicates trial counsel represented the petitioner for approximately six months prior to trial. Trial counsel prepared for the case by completing both legal and factual research, including reviewing the discovery and case file, speaking with the petitioner's former counsel, and contacting at least one Drug Task Force agent involved in the petitioner's arrest. During his preparation, however, trial counsel did not learn the name of the C.I. Thus, trial counsel filed a "Motion to Compel the Identity of the Confidential Informant" and made an oral motion "to require the State to provide criminal background information on the [C.I.]." Though the trial court granted the written motion and suggested prior counsel knew the name of the C.I., trial counsel still did not learn the name until the start of trial.

As discussed above, the post-conviction court found trial counsel's deficiency on this issue did not prejudice the outcome of the petitioner's trial. Similarly, we conclude the petitioner cannot show how trial counsel's failure to include this issue in the motion for a new trial prejudiced the outcome of that proceeding. Trial counsel testified that he

---

[4] The post-conviction court stated: "The manner in which this issue is framed by the [p]etitioner lends itself to an issue which would/should be addressed on direct appeal. Given the [p]etitioner is pro se, the post-conviction court is assuming [the] [p]etitioner means trial counsel was ineffective for not raising this issue on appeal."

- 15 -

successfully impeached the C.I. at trial, that he did not believe evidence of the C.I.'s murder conviction would have changed the outcome of the trial, and that he did not raise issues related to the C.I.'s criminal history in the motion for a new trial/on direct appeal because he did not find it to be relevant. As such, the record indicates trial counsel tailored his arguments in the motion for a new trial to ones that he found to be relevant, and the petitioner has failed to overcome the presumption that, under the circumstances, trial counsel's post-trial strategy was sound. *Strickland*, 466 U.S. at 689. As noted, trial counsel's strategic and tactical choices will not be second guessed when those choices are based on informed preparation. *Hellard*, 629 S.W.2d at 9. The petitioner is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE

- 16 -